DAVID A. LEVY *vs.* BOARD OF REGISTRATION AND
DISCIPLINE IN MEDICINE.[1]

Suffolk. April 4, 1979. — July 27, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Physicians and Surgeons. Board of Registration in Medicine. Administrative Law,* Agency.

A regulation of the Board of Registration and Discipline in Medicine making a physician convicted of any crime subject to discipline was within the broad grant of authority given the board by St. 1975, c. 362, § 3. [522-525]

Where a physician was convicted on several indictments charging him with grand larceny from the Department of Public Welfare and the submission of false data to the Rate Setting Commission, arising out of his conduct in the ownership and management of eleven nursing homes, the Board of Registration and Discipline in Medicine was warranted in finding that the crimes were closely related to the practice of medicine within the meaning of G. L. c. 112, § 5 (*b*), as amended through St. 1975, c. 362, § 3. [526-528]

This court found no reason to revise a decision of the Board of Registration and Discipline in Medicine revoking the license to practice medicine of a physician who had been convicted on several indictments arising out of his ownership and management of eleven nursing homes. [528-529]

---

[1] Now Board of Registration in Medicine. See St. 1979, c. 58.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 12, 1978.

The case was reported by *Quirico*, J.

*Roger S. Davis* for the plaintiff.

*Paul W. Johnson*, Assistant Attorney General (*Garrick F. Cole*, Assistant Attorney General, with him) for the defendant.

ABRAMS, J. A single justice of this court reserved and reported the issue raised by the plaintiff's action: whether the conviction of a physician for serious criminal offenses may result in the revocation or suspension of a medical practitioner's license. We hold that (1) the Board of Registration and Discipline in Medicine (Board) has jurisdiction to promulgate a rule making conviction of a crime a ground for discipline; (2) Levy's crimes are closely related to the practice of medicine and thus are within the Board's statutory authority (see G. L. c. 112, § 5 (*b*), as amended through St. 1975, c. 362, § 3); and (3) we find no reason to revise the Board's decision.

The plaintiff, David A. Levy, a licensed physician, was convicted of a number of criminal offenses arising out of payments made by the Commonwealth to Levy for the operation of nursing homes owned by him.[2] The Board decided that "[t]he crimes to which [Levy] pleaded guilty are serious offenses against statutes closely related to the practice of medicine." The Board revoked Levy's license to practice medicine. We conclude that the Board has ample authority to revoke or suspend a physician's license on conviction of a serious crime.

The facts are not in dispute. On November 22, 1976, Levy pleaded guilty to three indictments containing thirty-one separate counts of grand larceny from the Department of Public Welfare and to sixteen indictments

---

[2] Levy's license to operate nursing homes was not renewed and he was ordered to divest himself of all his nursing homes because a licensee of a nursing home must be of "good moral character." The Department of Public Welfare joined in this order of divestiture. Levy did not contest the order of divestiture.

charging Levy with the submission of false data to the Rate Setting Commission. These charges grow out of Levy's conduct in the ownership and management of eleven nursing homes located in the Commonwealth. Levy was given a two-year suspended sentence, he was fined $32,250, and he was ordered to pay restitution totalling $313,854 to the Department of Public Welfare.

Two weeks after Levy's convictions, the Board issued an "Order to show cause"[3] why his certificate of registration in medicine should not be revoked, suspended or cancelled. The Board's Order to show cause listed Levy's criminal convictions.

The parties then entered into a stipulation of agreed facts, filed April 19, 1978. By this stipulation, Levy agreed to waive any "right to a hearing on the merits of the matters set forth in the Board's Order to Show Cause." Both parties waived the right to introduce evidence beyond the facts admitted in the stipulation, and the parties agreed to argue only the question of the appropriate sanction to be imposed by the Board. The parties later amended the stipulation in order to "present legal arguments as to the authority of the Board to impose sanctions in this matter."

After a hearing held by the Board on October 6, 1978, the Board issued a Memorandum of Final Decision and Order. The Board recited Levy's criminal convictions and determined that it had the authority to discipline Levy "for his criminal misconduct." The Board concluded that "[t]he crimes to which the defendant pleaded guilty are serious offenses against statutes closely related to the practice of medicine." Accordingly, the Board revoked Levy's license to practice medicine in the Commonwealth.[4]

---

[3] Section 1.2 of the Rules of Procedure Governing Disciplinary Proceedings Before the Board of Registration and Discipline in Medicine (Rules of Procedure) defines an "Order to show cause" as: "a paper served by the Board upon a registrant ordering the person to appear before the Board for an adjudicatory proceeding."

[4] The Board's order also provides that Levy may apply to the Board

The essence of Levy's argument is that the Board lacked the authority to revoke his license on the basis of his criminal convictions because the crimes for which he was convicted were not directly related to the practice of medicine.[5] We do not agree.

In response to growing public concern about "the continued availability of medical malpractice insurance" the Legislature in 1975 enacted a statutory scheme designed to meet the crisis created by the volume of malpractice litigation. St. 1975, c. 362. As part of its legislative policy the statute governing the Board of Registration and Discipline in Medicine was amended.

The statute, as amended, enables the Board to revoke, suspend, or cancel the certificate of registration (license) or otherwise discipline a physician for a number of specified reasons.[6] Additionally, the Board received a delega-

---

for reinstatement of his certificate of registration one year from the date of the Board's order. The Board may but need not allow Levy to resume the practice of medicine after a period of one year: "An application for reinstatement . . . will be granted only if the Board determines that doing so would advance the public interest." Rules of Procedure §§ 5.6 (a), (c). Levy has not been permitted to practice medicine during the pendency of this appeal. See G. L. c. 112, § 64.

[5] Levy also argues that the Board's Order to show cause is constitutionally deficient because it "lacks sufficient notice of the exact charges made against the appellant." This argument is utterly without merit. It is clear that the Board's Order provided sufficient notice to Levy that the Board was considering disciplinary action against him as the result of his multiple criminal convictions. Accord, *Davis* v. *Board of Registration in Medicine*, 251 Mass. 283, 285 (1925) ("The notice to be issued to a registered physician of such a hearing is not to be construed with technical strictness"). Since the Board's decision rests solely on Levy's criminal convictions, it cannot be said that the Board's Order to show cause failed to provide Levy with "sufficient notice of the issues involved to afford [him] reasonable opportunity to prepare and present evidence and argument." G. L. c. 30A, § 11(1). See *Dwyer* v. *Commissioner of Ins.*, 375 Mass. 227, 235 (1978) (failure to show "surprise to the extent of 'prejudice' to . . . 'substantial rights.' [G. L. c. 30A] § 14[7]").

[6] The offenses specified in St. 1975, c. 362, § 3, are:
"(a) fraudulently procured said certificate of registration;

tion of legislative authority and a mandate that it "shall, after proper notice and hearing, adopt rules and regulations governing the practice of medicine in order to promote the public health, welfare, and safety." St. 1975, c. 362, § 3. The act provided that "nothing in this section [i.e., the section concerned with discipline] shall be construed to limit this general power of the board." *Id*.[7]

Pursuant to this legislative mandate the Board on June 28, 1976, adopted a regulation making conviction of a crime a basis for discipline. See Rules of Procedure Governing Disciplinary Proceedings Before the Board of Registration and Discipline in Medicine (Rules of Procedure) § 3.5 (a) (g) ("A complaint against a physician . . . may be founded on . . . conviction of any crime"). Levy claims that the Board's rule is an improper exercise of legislative power. He asserts that the absence of the words "conviction of a felony" in the statute precludes the Board from disciplining physicians who are convicted of a felony not directly related to the practice of medicine.

---

"(*b*) is guilty of an offense against any provision of the laws of the commonwealth relating to the practice of medicine, or any rule or regulation adopted thereunder;

"(*c*) is guilty of gross misconduct in the practice of medicine or of practicing medicine fraudulently, or beyond its authorized scope, or with gross incompetence, or with gross negligence on a particular occasion or negligence on repeated occasions;

"(*d*) is guilty of practicing medicine while the ability to practice is impaired by alcohol, drugs, physical disability or mental instability;

"(*e*) is guilty of being habitually drunk or being or having been addicted to, dependent on, or a habitual user of narcotics, barbiturates, amphetamines, hallucinogens, or other drugs having similar effects;

"(*f*) is guilty of knowingly permitting, aiding or abetting an unlicensed person to perform activities requiring a license for purposes of fraud, deception or personal gain, excluding activities permissible under any provision of the laws of the commonwealth relative to the training of medical providers in authorized health care institutions and facilities;

"(*g*) is guilty of violating any rule or regulation of the board, governing the practice of medicine."

[7] In this respect, the statute differed from the prior statute which set forth the grounds for discipline with no corresponding broad delegation of authority to the Board. See St. 1974, c. 723, § 3.

However, "[a]n agency's powers are shaped by its organic statute taken as a whole and need not necessarily be traced to specific words." *Commonwealth* v. *Cerveny*, 373 Mass. 345, 354 (1977). See *Simmons* v. *County of Suffolk*, 230 Mass. 236, 237 (1918); *Massachusetts Trustees of E. Gas & Fuel Assocs.* v. *United States*, 312 F.2d 214, 220 (1st Cir. 1963), aff'd 377 U.S. 235 (1964). See also *Creed* v. *Apog*, 377 Mass. 522, 524 (1979). Cf. *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Auth.*, 368 Mass. 425, 432 (1975). Compare *Chakrabarti* v. *Marco S. Marinello Assocs.*, 377 Mass. 419, 422-423 (1979) (omission not accompanied by broad grant of authority). We do not think that in the context of the statute as a whole, the omission of "conviction of a felony" from the disciplinary list is dispositive, "[g]iven the strong public interest in promptly disciplining errant physicians." *Arthurs* v. *Stern*, 560 F.2d 477, 480 (1st Cir. 1977), cert. denied, 434 U.S. 1034 (1978). Accord, *Kansas State Bd. of Healing Arts* v. *Foote*, 200 Kan. 447, 451-454 (1968) (omission of incompetency [malpractice] from list of fifteen grounds for revocation of physician's license does not preclude board from acting, even where prior form of statute had so provided); *Hughes* v. *State Bd. of Health*, 348 Mo. 1236, 1239 (1942) ("such specific enumeration does not thereby exclude other acts indicative of unprofessional or dishonorable conduct not mentioned in the statute. Any conduct, although not specified, which by common opinion and fair judgment is determined to be unprofessional or dishonorable may constitute grounds of revocation").

The role of the Board in the over-all statutory scheme is to take primary responsibility in the regulation of the practice of medicine in the Commonwealth "in order to promote the public health, welfare, and safety." St. 1975, c. 362, § 3. Where an administrative agency is vested with broad authority to effectuate the purposes of an act "the validity of a regulation promulgated thereunder will be sustained so long as it is 'reasonably related to the purposes of the enabling legislation.' " *Consolidated Cigar*

*Corp.* v. *Department of Pub. Health,* 372 Mass. 844, 855 (1977), quoting from *Mourning* v. *Family Publications Serv., Inc.,* 411 U.S. 356, 369 (1973), quoting from *Thorpe* v. *Housing Auth. of Durham,* 393 U.S. 268, 280-281 (1969). Moreover, "we are bound to test the regulations by the same standard which would apply to a statute. Thus, we must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate." *Consolidated Cigar Corp.* v. *Department of Pub. Health, supra.* See *School Comm. of Wellesley* v. *Labor Relations Comm'n,* 376 Mass. 112, 116 (1978). See also *Greater Boston Television Corp.* v. *FCC,* 444 F.2d 841, 857 (D.C. Cir. 1970), cert. denied, 403 U.S. 923 (1971) ("Discretion is particularly broad when an agency is concerned with fashioning remedies and setting enforcement policy"). See generally *Vermont Yankee Nuclear Power Corp.* v. *Natural Resources Defense Council, Inc.,* 435 U.S. 519, 558 (1978); *Consolo* v. *FMC,* 383 U.S. 607, 620-621 (1966).

When the Legislature delegates to an administrative agency a broad grant of authority to implement a program of reform or social welfare, the administrative agency generally has a wide range of discretion in establishing the parameters of its authority pursuant to the enabling legislation. Where "the dominant theme in adoption of a statute is reform, . . . the administrator [should] construe the statute broadly to further the purposes of such reform." Blumrosen, Toward Effective Administration of New Regulatory Statutes, 29 Ad. L. Rev. 87, 95 (1977). Accord, *Commonwealth* v. *Racine,* 372 Mass. 631, 635-638 (1977) (enforcement policy set by imposition of daily penalties for noncompliance with order to remove lead paint from residential premises); *Consolidated Cigar Corp.* v. *Department of Pub. Health, supra* (legislative policy permits agency to fashion remedies on behalf of migrant farm workers).

In keeping with its statutorily delegated authority, the Board used its rulemaking authority to provide itself with the flexibility it needed to investigate and to determine whether the public interest requires the revocation of a physician's license on conviction of a crime.[8] The regulation, as interpreted by the Board, is thus "reasonably related to the purposes of the enabling legislation." *Consolidated Cigar Corp.* v. *Department of Pub. Health, supra.* As such, it is a valid exercise of the Board's authority.[9] See *Commonwealth* v. *Racine, supra* at 635; *Commonwealth* v. *Diaz,* 326 Mass. 525, 527 (1950).

Even if we accept Levy's premise that the Board lacked jurisdiction to discipline a physician for crimes unrelated to the practice of medicine (which we do not), Levy's claim still fails. The Board's decision was based not merely on the fact that Levy had been convicted of crimes but that the crimes were closely related to the practice of medicine. We agree with the Board's determination that the crimes of which Levy was convicted are closely related to the practice of medicine. See G. L. c. 112, § 5 (b), as amended through St. 1975, c. 362, § 3.

The practice of modern medicine involves financial management, as well as the care and treatment of patients. A substantial portion of persons seeking medical assistance are assured that a portion of their costs will be paid by a third party. See Wecht, Legal Med. Ann. 1978, at 425 (1979) ("in excess of 90 percent of the population is now covered by some form of third-party payment mechanism"); Aday & Andersen, Insurance Coverage and

---

[8] The regulations do not make license revocation mandatory on conviction of any crime, and thus allow the Board to consider the nature of the crime in determining the appropriate sanction. See Rules of Procedure § 5.6 (a). See also note 4, *supra.*

[9] Levy makes no suggestion that the Board has been inconsistent, arbitrary, or capricious in the application of the regulation. Nor does he claim that the Board applied the regulation mechanically or without due consideration in his case. Indeed, the Board gave a reasoned decision for its determination that Levy's license must be revoked.

Access: Implications for Health Policy, 13 Health Servs. Research 369, 371 (1978). Included among third-party payors are State governments, the Federal government and a variety of private insurance plans. See, e.g., H. Cotton, Medical Practice Management 197 (1967); Hoffman, Our Health Care Delivery Systems, 63 Int'l Surgery 65, 68 (1978). Therefore, an intentional misdeed relating to third-party payors reflects adversely on a physician's fitness to practice medicine. It is irrelevant that it is a third party, and not a patient, who is being defrauded. See *Matanky* v. *Medical Examiners,* 79 Cal. App. 3d 293, 306 (1978); *Eisenstein* v. *Regents of Univ. of State of N.Y.,* 26 App. Div. 2d 971, 971-972 (N.Y. 1966). Clearly, the Board's conclusion that Levy's criminal convictions were "closely related to the practice of medicine" is amply warranted.[10]

Finally, Levy asks that we revise the decision of the Board[11] to order the entry of a less severe sanction, asserting that he has been punished sufficiently for his crimes. The revocation of a physician's license, however, is designed not to punish the physician for his crimes but to protect the public health, welfare, and safety. "The revocation or suspension of a license is not penal, but rather, the Legislature has provided for such to protect the life, health and welfare of the people at large and to set up a plan whereby those who practice medicine will have the qualifications which will prevent, as far as possible, the evils which could result from ignorance or incompetency

---

[10] In 1977, the Legislature amended G. L. c. 112, § 5, and added to the list of offenses the following: "(*g*) has been convicted of a criminal offense which reasonably calls into question his ability to practice medicine." St. 1977, c. 165. Our disposition of this case makes it unnecessary to consider whether this amendment, which was effective at the time the Board acted to revoke Levy's license, might apply to Levy's case. See *Hawker* v. *New York,* 170 U.S. 189, 191-192 (1898).

[11] General Laws c. 112, § 64, provides in pertinent part that "[t]he supreme judicial court . . . may enter a decree revising or reversing the decision of the board, in accordance with the standards for review provided in [G. L. c. 30A, § 14 (7)] . . . ."

or a lack of honesty and integrity." *Matanky* v. *Medical Examiners, supra* at 305, quoting from *Furnish* v. *Medical Examiners*, 149 Cal. App. 2d 326, 331, cert. denied, 355 U.S. 827 (1957). See *Erdman* v. *Regents of Univ. of State of N.Y.*, 24 App.Div.2d 698, 699 (N.Y. 1965) ("such conduct [fraud] reflects most unfavorably on the medical profession").

We think that the Board's determination reflects these sound principles, as well as the recognition that the practice of medicine, "because of [its] peculiar relation to the public, require[s] that those holding licenses must have the important qualification of good character." *Hughes* v. *State Bd. of Health*, 348 Mo. 1236, 1241 (1942), quoting from *State* v. *Hazzard*, 139 Wash. 487, 493 (1926). In the practice of medicine, the application of knowledge is principally judgmental rather than mechanical. A personal relationship of trust and confidence must exist between a physician and his patient if the patient is to have confidence in the physician's professional judgment. "The public has the right to expect the highest degree of integrity from members of the medical profession." Vodicka, Medical Discipline, 233 J.A.M.A. 1427 (1975). See *Forziati* v. *Board of Registration in Medicine*, 333 Mass. 125, 127 (1955); *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424, 428-429 (1921) ("Mere intellectual power and scientific achievement without uprightness of character may be more harmful than ignorance. Highly trained intelligence combined with disregard of the fundamental virtues is a menace").

Furthermore, we think the Legislature granted the Board the authority to protect not only the public, but also the vast majority of physicians in the community, who do possess the "highest degree of integrity," and who ought not to have public esteem for their honorable and learned profession eroded by a few who do not live up to the solemn nature of their public trust.

Finally, a request for us to interfere with a board's exercise of its sound discretion is only appropriate in the

most extraordinary of circumstances — circumstances not here present. It is "well settled that in reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh." *Shakin* v. *Medical Examiners,* 254 Cal. App. 2d 102, 112-113 (1967), appeal dismissed and cert. denied, 390 U.S. 410 (1968), quoting from *Brown* v. *Gordon,* 240 Cal. App. 2d 659, 667 (1966). See *Matanky* v. *Medical Examiners, supra* at 304; *Eisenstein* v. *Regents of Univ. of State of N. Y.,* 26 App. Div. 2d 971, 972 (N.Y. 1966). Accord, G. L. c. 112, § 64.

The action is remanded to the single justice with directions to enter a judgment affirming the decision of the Board revoking David A. Levy's license to practice medicine.

*So ordered.*