Ms. Thelma P. Bourne Executive Secretary Colorado Mobile Home Licensing Board State Services Building, 6th Floor 1525 Sherman Street Denver, Colorado 80203
Dear Ms. Bourne:
I am in receipt of your memorandum dated October 24, 1979, in which you request an attorney general's opinion concerning the board's scope of authority to discipline unlicensed dealers or salesmen.
QUESTION PRESENTED AND CONCLUSION
I infer from the statutory provisions cited in your request for this opinion that the board's specific inquiry concerns whether the board can impose a civil penalty on an unlicensed dealer pursuant to C.R.S. 1973, 12-51.5-121 for an unlawful act as prescribed by C.R.S. 1973, 12-51.5-120, and whether alternatively, or in conjunction with such fine, the board can enjoin unlicensed salesmen or dealerships from engaging in the sale of mobile homes.
 The answer to the above question is that the board currently has no authority to engage in any administrative proceeding against unlicensed dealers or salesmen engaging in mobile home sales. Inherent in this conclusion is that any adjudication by the board resulting in the imposition of a fine and/or injunctive order against an unlicensed dealer clearly exceeds the scope of the board's delegated powers. The basis for this opinion is derived from an analysis of the Mobile Home Licensing Act, C.R.S. 1973, 12-51.5-101, et seq., and specifically, an analysis of the powers legislatively intended to be delegated to the Mobile Home Licensing Board (hereinafter "the board").
ANALYSIS
It should be noted from the outset that the basis of this opinion concerning the board's powers does not include an analysis of the Colorado Administrative Procedure Act. The reason for this is that courts have been consistent in holding that an administrative agency's powers are limited to the powers expressly provided by the organic statute under which it operates. See, Levy v. Board of Registration andDiscipline of Medicine, 392 N.E.2d 1036 (Mass. 1979). Moreover, courts have clearly rejected administrative agency attempts to broaden their powers pursuant to provisions of the Administrative Procedure Act. See, Andrews v.Nevada State Board of Cosmetology, 467 P.2d 96
(Sup.Ct. of Nev. 1970). Accordingly, this opinion will be confined to an analysis of the board's powers as determined from the statutory language of the Mobile Home Act and as necessary to effectuate the legislative intent of said Act.
Although it is very unlikely that the board considers criminal adjudicatory authority as being within its jurisdictional bounds, the fact that the Mobile Home Act includes a criminal (unlawful) act provision and grants the board authority to enforce said Act raises the issue of the board's criminal enforcement power. Section 120 makes it "unlawful to act as a mobile home dealer or mobile home salesman unless such person has been duly licensed pursuant to the provisions of this article." Furthermore, violations of this section subject persons to misdemeanor convictions and penalties.
The board clearly has no authority or power to make adjudications or orders affecting any persons pursuant to a criminal statute. One kind of power which clearly cannot be conferred upon an administrative agency is the power to determine innocence or guilt in criminal matters. The reason is that a person charged under a criminal statute is entitled to special procedural protection of the kind that is given neither in civil proceedings in court nor in administrative hearings. The Supreme Court had declared that "civil procedure is incompatible with the accepted rules of constitutional guarantees governing the trial of criminal prosecutions." Helvering v. Mitchell, 303 U.S. 391
(1938).
However, section 121(1) provides, in part, that "Any person, firm, association, or corporation which violates any provision of this article or any standards or rules or regulations promulgated pursuant to this article shall be punished upon a finding of misconduct by the board. . . ."
Considering these two sections together, it is arguable that, since section 120 is a provision of article 51.5, section 121 authorizes the board to make findings of misconduct for violations of section 120 and to impose civil penalties accordingly. However, this presumes the board's authority to make findings or adjudications of misconduct against unlicensed dealers, which is the ultimate issue at hand. The fact that the Mobile Home Act is silent as to remedies available to the board to prevent a person from violating the Act, raises the question of the board's authority to issue orders enjoining said violations.
Administrative agencies have no general, equity or common law powers. They are creatures of the legislature and are limited to those powers as are expressly conferred on them by statute or as are necessarily implied therefrom as essential to the exercise of the powers expressly conferred and which the legislature intended to grant them. State ex. rel. Greenburg v. FloridaBoard of Dentistry, 297 So.2d 628 (Fla.App. 1974). Consequently, the board's authority to discipline unlicensed dealers or salesmen or to issue injunctive orders relative to said dealers or salesmen must be expressly granted or necessarily implied from the provisions of article 51.5 of title 12 and intended by the legislature to be so granted.
The board's authority is stated in C.R.S. 1973, 12-51.5-103(3). There, the board is delegated a broad range of regulatory powers concerning the licensing of applicants and the discipline of licensees. Additionally, the board is authorized to establish procedures for the inspection of mobile home parks as well as standards, rules and regulations pertaining to the business conducted between mobile home manufacturers and mobile home dealers. Nowhere within this subsection is the board expressly conferred the specific power to make adjudications involving persons not licensed pursuant to article 51.5 or to issue injunctive orders. Nor can such authority be conferred by implication. Implied powers are those necessary to carry into effect powers already expressly granted by the language of the statute, and which are therefore presumed to have been within the intention of the legislative grant. Ravettino v. City of SanDiego, 160 P.2d 52 (Cal.App. 1945).
C.R.S. 1973, 12-51.5-103(3)(d) is the only provision in article 51.5 which arguably provides the express authority necessary to support an implied power to regulate unlicensed individuals. C.R.S. 1973, 12-51.5-103(3)(d) empowers the board "To render findings, orders, and adjudications consistent with this article and the laws of this state as the board deems necessary to carry out the provisions of this article."
A reading of C.R.S. 1973, 12-51.5-103(3)(d), however, discloses a significant restriction on the board's adjudicatory powers: the board's findings, orders, and adjudications must be consistent with the provisions of article 51.5. It is my conclusion that the exercise of adjudicatory authority by the board over unlicensed persons is inconsistent with the provisions of article 51.5.
This conclusion is apparent from the fact that the penalty provisions of section 121(1) logically apply to licensees only in that the penalties prescribed therein include monetary fines for first and second offenses but call for a permanent revocation of license as well as a fine for a third offense. The application of this section to licenses only is clear because the sanction of revocation is meaningless when applied to unlicensed persons. Consequently, an attempt to apply this section 121 to the unlicensed individuals of section 120 exceeds its intended scope and is unauthorized.
Another indication that the board is to have no adjudicatory authority over unlicensed individuals appears in C.R.S. 1973, 12-51.5-106. Section 106 authorizes the board to refer to the attorney general for prosecution matters involving only licensees. This same section, as well as the rest of the entire article 51.5, fails to make reference to or authorize the attorney general or any other legal representative to represent the board in matters involving unlicensed dealers.
A survey of the numerous Colorado professional and occupational licensing statutes, primarily within the Department of Regulatory Agencies, offers additional support for the conclusion that the Colorado legislature, when enacting said statutes, clearly intended to limit the adjudicatory powers conferred upon such agencies. Of the thirty licensing statutes I have reviewed, twenty-seven statutes expressly provide procedures whereby the agencies governed by said statute may apply to a court of competent jurisdiction for statutory enforcement remedies including injunctive orders, compliance orders and contempt judgments. The only reasonable inference to be drawn from this data is that the legislature did not intend administrative agencies to have inherent equity powers or jurisdiction resembling those of district courts. Otherwise, the statutory provisions specifically directing each agency to apply to the appropriate district court for various equitable remedies would not have been necessary. The fact that only three out of thirty occupational licensing statutes, one of which is the Mobile Home Act, fail to expressly provide district court procedures to enforce its provisions, suggests some oversights on the part of the legislature in this regard. The other reasonable explanation for why the board's powers should be interpreted differently from the majority of similar agencies is that the legislature specifically intended to either limit or to enlarge the board's enforcement powers. However, it is highly improbable that the legislature intended to enlarge or restrict the board's powers without clearly manifesting an intention to do so.
SUMMARY
To briefly summarize my opinion, the board lacks both the authority and an administrative mechanism (procedure) to impose civil penalties on unlicensed mobile home dealers and salesmen. It further lacks the jurisdictional authority to enjoin acts prohibited by the statute. However, the board is not totally powerless to act in extreme cases in which unlicensed activity presents a serious risk to the interests of Colorado citizens. If such a case arises, the board may refer violations of section 120 to the appropriate criminal law enforcement authority (usually the district attorney) for whatever the authority, in its discretion, deems appropriate. Additionally, in extreme cases, the board may apply to the Office of the Governor for an executive order pursuant to C.R.S. 1973, 24-31-101 authorizing and requiring the attorney general to apply to a court of equity for appropriate remedies necessary to protect the interests of the state.
Very truly yours,
 J.D. MacFARLANE Attorney General
ADMINISTRATIVE LAW
MOBILE HOMES
LICENSES
C.R.S. 1973, 12-51.5-103(3)(d)
C.R.S. 1973, 12-51.5-120
C.R.S. 1973, 12-51.5-121(1)
REGULATORY AGENCIES, DEPT.
Mobile Home, Bd. of
Mobile home board has no authority to administratively discipline unlicensed dealers or salesmen engaged in mobile home sales.