CLIFF HOUSE NURSING HOME, INC. *vs.* DEPARTMENT OF PUBLIC HEALTH.

Suffolk. February 15, 1984. — May 9, 1984.

Present: BROWN, PERRETTA, & WARNER, JJ.

*Nursing Home. Massachusetts Medical Assistance Program. Words, "Acquittal."*

Where the administrator of a nursing home was indicted for accepting from the relatives of Medicaid patients amounts in excess of the allowable rate of reimbursement and subsequently admitted sufficient facts to warrant a finding of guilty and was placed on probation, dismissal of the indictment after the administrator had complied with the terms of his probation did not constitute an "acquittal" under 105 Code Mass. Reg. § 152.010 (7) (1981). [114-115]

The Department of Public Health had authority to adopt a regulation providing that, if an individual with an ownership or controlling interest in a nursing home is indicted for or convicted of a felony in connection with the operation of a nursing home, the nursing home will be excluded from a rate incentive program providing for a higher daily rate for services to patients who are on public assistance. [115-116]

CIVIL ACTION commenced in the Superior Court Department on February 26, 1982.

The case was heard by *Ronan,* J., on motions for summary judgment.

*John O. Mirick* for the plaintiff.

*Ellen L. Janos,* Assistant Attorney General, for the defendant.

BROWN, J. The plaintiff (Cliff House) is appealing from a summary judgment in favor of the defendant, Department of Public Health (DPH), entered in the Superior Court. The controversy here turns on the interpretation and application of a regulation of the DPH.

The Massachusetts Medical Assistance Program (so called Medicaid) is administered in Massachusetts by the Department

of Public Welfare (DPW) in conjunction with the DPH and the Rate Setting Comission (commission). See G. L. c. 118E, §§ 1 et seq. The DPW sets conditions and standards for eligibility in the program and pays participating nursing homes for services rendered to Medicaid patients in accordance with per diem rates established by the commission. Under a rate incentive program a nursing home may qualify, based on a numerical rating system (see 105 Code Mass. Regs. § 152.001[d] [1980], now 105 Code Mass. Regs. § 152.001 [b] [1983]), for a higher daily rate for services to patients who are on public assistance. See 114.2 Code Mass. Regs. § 2.16(7) (1979). The DPH regulations also set forth several criteria which will cause a facility to be excluded from the rate incentive program. 105 Code Mass. Regs. §§ 152.009 and 152.010 (1981). See now 105 Code Mass. Regs. § 152.007 (1983).

On May 13, 1977, Melvin Silverman, the husband of the president and majority stockholder of Cliff House, and the administrator of that facility, was indicted for accepting from the relatives of Medicaid patients of Cliff House over $26,000 in excess of the allowable Medicaid rate of reimbursement. On June 9, 1977, Silverman pleaded guilty to the larceny charge. He was sentenced to three years' probation and ordered to pay restitution to the Commonwealth in the amount of $26,074, court costs, and a fine. On March 28, 1978, Silverman was allowed to retract his guilty plea and, in its stead, admit to sufficient facts to warrant a finding of guilty. Following that admission by Silverman, the trial judge continued the case without a finding for a period of three months and again placed Silverman on probation with the condition that he pay the previously ordered restitution, court costs, and fine. After Silverman complied with the terms of his probation, the judge dismissed the larceny indictment.

In August, 1979, the DPH determined that the Cliff House facility was entitled to a higher daily rate. However, in July, 1981, the DPH notified Cliff House that it was being excluded from the rate incentive program, pursuant to 105 Code Mass. Regs. § 152.010(7) (1981) (see now § 152.007 [7] [1983]). This regulation provides that "[a]ny of the following factors

will exclude a facility from the . . . [rate incentive program] . . . (7) An individual with an ownership or control interest in the subject facility has been indicted or convicted of a felony in connection with the operation of a long term care facility. If under indictment, the exclusion will be rescinded in the event of an acquittal." A hearing officer for the DPH later entered a decision upholding the exclusion. This decision was then approved and adopted by the Public Health Council. Cliff House sought judicial review of the DPH decision pursuant to G. L. c. 30A, § 14. The judge granted summary judgment for the DPH.

Cliff House claims that (1) it was improperly excluded from the rate incentive program because the indictment against Silverman was ultimately dismissed; (2) the DPH wrongfully considered Silverman's initial plea of guilty and statements made in connection with the plea;[1] and (3) the exclusion here was not rationally related to the encouragement of superior health care.

As noted above, 105 Code Mass. Regs. § 152.010(7) (1981), provides in pertinent part that: "[i]f under indictment, the exclusion will be rescinded in the event of an *acquittal*" (emphasis supplied). A dismissal does not usually involve a determination of guilt or innocence. See *United States* v. *Scott,* 437 U.S. 82, 98 & n.11 (1978). "[A] defendant is acquitted only when 'the ruling of the judge . . . actually represents a resolution [in the defendant's favor], correct or not, of some or all of the factual elements of the offense charged.'" *Id.* at 97, quoting from *United States* v. *Martin Linen Supply Co.,* 430 U.S. 564, 571 (1977). There was no such ruling in Silverman's favor. The dismissal of the indictment here did not come about "after a consideration of the facts and a finding of innocence of the charge." *Rolph* v. *City Ct. of Mesa,* 127 Ariz. 155, 158 (1980). Moreover, even after withdrawing his plea, Silverman admitted to sufficient facts. "[A]n 'admission to sufficient facts' or 'submission to a finding' means an admission to facts sufficient to warrant a finding of guilty." *Commonwealth* v. *Duquette,*

---

[1] The manner in which we resolve the merits of this matter makes it unnecessary for us to address this contention.

386 Mass. 834, 838 (1982). Silverman's case was then continued for three months and he was ordered to pay restitution, court costs and a fine. "[A] continuance without a finding [is not] a termination of the prosecution in [the defendant's] favor." *Brown* v. *Board of Appeal on Motor Vehicle Liability Policies & Bonds,* 389 Mass. 599, 602 (1983). Consistent with the above reasoning we have little difficulty in concluding that Silverman has not been *acquitted* within the meaning of the regulation. Cf. *Commissioner of the Metropolitan Dist. Commn.* v. *Director of Civil Serv.,* 348 Mass. 184, 194 (1964); *Commonwealth* v. *Vickey,* 381 Mass. 762, 770 (1980) (it is truism that a pardon does not wipe out guilt).

Cliff House's argument that its exclusion from the rate incentive program is not rationally related to the encouragement of superior health care similarly is, as we had occasion to say in another context, but in connection with the same nursing home, a "challenge fated to fail." *Cliff House Nursing Home, Inc.* v. *Rate Setting Commn.,* 16 Mass. App. Ct. 300, 303 (1983). The rate incentive program seeks to encourage the operation of well-run, high quality facilities, and eligibility is made dependent upon an evaluation of all aspects of the nursing home's past management, care and compliance with State and Federal requirements. See 114.2 Code Mass. Regs. § 2.16(7) (1983). See also 105 Code Mass. Regs. § 152.001 (1983).

"In the absence of clear error, the interpretation an administrative body gives to its own rule is entitled to deference." *Purity Supreme, Inc.* v. *Attorney General,* 380 Mass. 762, 782 (1980). This court " 'must apply all rational presumptions in favor of the validity of the administrative action and not declare it void unless its provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.' " *American Family Life Assur. Co.* v. *Commissioner of Ins.,* 388 Mass. 468, 477 (1983). See also *Finkelstein* v. *Board of Registration in Optometry,* 370 Mass. 476, 478 (1976). Here, it cannot be said that the exclusion is not rationally related to the encouragement of superior health care. In *Levy* v. *Board of Registration and Discipline in Medicine,* 378 Mass. 519 (1979), the court held that a nursing home owner's

financial crimes (larcenies) involving Medicaid are "closely related to the practice of medicine." *Id.* at 526. The court in *Levy* recognized the financial aspect to the practice of medicine (see *Feldstein* v. *Board of Registration in Medicine,* 387 Mass. 339, 341 [1982]) and went on to state that "[t]he practice of modern medicine involves financial management, as well as the care and treatment of patients." 378 Mass. at 526. See also the extensive discussion of the close relationship between financial management and the care and treatment of patients, *id.* at 526-527. Indeed, in light of the increasing problem of Medicaid fraud by those providing health care services, the Legislature has seen fit to enact the Medicaid False Claim Act, G. L. c. 118E, §§ 21A-21G, inserted by St. 1980, c. 524, § 3. See *Commonwealth* v. *Leavitt,* 17 Mass. App. Ct. 585, 590 (1984).

*Judgment affirmed with*
*double costs.*