EDWARD J. GURRY vs. BOARD OF PUBLIC ACCOUNTANCY.

Suffolk. November 5, 1984. — February 26, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

Board of Public Accountancy. Accountant. Administrative Law, Regula-
tions. Due Process of Law, Vagueness of regulation.

The Board of Public Accountancy had authority to suspend the license of a
certified public accountant who had, while employed as treasurer of a
company, made an unauthorized appropriation of the company's funds
on the ground that this conduct constituted "an act discreditable to the
profession [of public accounting]" in violation of 252 Code Mass. Regs.
§ 3.05 (1). [121-125]

Provisions of 252 Code Mass. Regs. § 3.05 (1), prohibiting "an act dis-
creditable to the profession" by a certified public accountant, were not
unconstitutionally vague as applied by the Board of Public Accountancy
to suspend the license of a certified public accountant who had, while
employed as treasurer of a company, made an unauthorized appropriation
of the company's funds. [125-128]

It was stated that G. L. c. 112, § 64, did not preclude a single justice of this
court in all circumstances from issuing a temporary stay on appeal from
an order of a licensing board suspending or revoking a license. [128-130]

CIVIL ACTION commenced in the Superior Court Department
on August 14, 1983.

Upon transfer to the Supreme Judicial Court for the county
of Suffolk, the case was reported by Nolan, J.

Michael E. Festa for the plaintiff.

Kim E. Murdock, Assistant Attorney General, for the defend-
ant.

LYNCH, J. Edward J. Gurry seeks review of a decision of
the Board of Public Accountancy (board) that he surrender for
two years his certificate and license to practice as a certified
public accountant. The case reaches us pursuant to a reservation
and report by a single justice of the Supreme Judicial Court
for Suffolk County. We affirm the board's order suspending
Gurry's certificate and license for two years.

The board issued its decision suspending Gurry's certificate and license after Lee Kennedy Co., Inc. (company), brought a complaint in July, 1982. The board held a hearing on the complaint and issued its decision on July 14, 1983, in which it concluded that Gurry had made an unauthorized appropriation of funds from the company, which constituted "discreditable conduct" for a certified public accountant in violation of 252 Code Mass. Regs. § 3.05(1) (1979).

After Gurry filed a complaint pursuant to G. L. c. 30A, § 14, in the Superior Court seeking review of the board's order suspending his certificate and license to practice as a public accountant, a single justice ordered that the matter be transferred to the Supreme Judicial Court for Suffolk County.[1] After a hearing, the single justice reserved and reported the case to the full court, and allowed Gurry's motion for a preliminary injunction to stay the board's action.

Gurry argues that we should overturn the board's decision because the suspension was for conduct unrelated to the profession of public accounting and, therefore, the board exceeded its authority under G. L. c. 112, § 87C (*a*). Gurry contends, alternatively, that the regulation proscribing discreditable conduct by a certified public accountant is impermissibly vague in violation of the due process clause of the Fourteenth Amendment to the United States Constitution. The board argues that the single justice erred in staying the board's decision pending review by this court, because G. L. c. 112, § 64, prohibits a stay prior to entry of a final judgment revising or reversing the board's decision.

We conclude that the board acted within its authority under G. L. c. 112, § 87C (*a*), in suspending Gurry. Furthermore, we hold that the board's regulatory standard proscribing "discreditable conduct," as applied in this case, is not impermissibly vague in violation of due process. We discuss but need not decide the board's challenge to the issuance of the stay by the single justice.

---

[1] In its decision the board stated: "You are hereby informed of your right, pursuant to Section 14 of Chapter 30A of the General Laws, to file a petition for judicial review of this decision in Superior Court within thirty days of receipt of this decision." The Supreme Judicial Court is the appropriate court for such petitions. G. L. c. 112, § 64.

Gurry had been licensed as a certified public accountant by the Commonwealth since 1972. In 1980, the company became a client of Gurry, O'Neill & Company, the accounting firm in which Gurry was the only active partner. In October, 1980, after acting as the outside accountant for the company for about two months, Gurry was hired as an employee with the title "treasurer." As treasurer, Gurry organized and supervised the bookkeeping and financial planning functions for the company. Gurry's authority included the right to issue checks on the company account.[2] Gurry, O'Neill & Company continued to act as the outside accountant for the company and its related ventures until April or May, 1981.

On April 3, 1981, Gurry wrote a check for $11,000 on the company account payable to himself. Gurry testified that he wrote the check because Lee Kennedy had authorized him to borrow $20,000 from company funds with no repayment schedule. Kennedy testified, however, that he had authorized a loan of $3,000 for a few days only, and that initially he knew nothing of the April check. It was brought to his attention by the firm's bookkeeper, Catherine Graham.

Sometime before May 1, 1981, Gurry wrote a personal check dated May 1, 1981, for the full amount of the April "loan." On May 2, 1981, a second check for $11,000 was issued to Gurry on the company account. This check was also unauthorized and was signed with Graham's signature plate. Gurry testified that Graham had prepared it, but Graham denied this. In June, Gurry repaid $1,000 of the $11,000 that he had "borrowed."

On July 1, 1981, Kennedy directed a memorandum to Gurry in which he demanded full repayment by July 15, 1981, and informed him that "[u]nder no circumstances is anyone authorized or allowed to write checks without [Graham's] signature or my signature." Kennedy's secretary testified that she

---

[2] Gurry's signature was one of three embossed on signature plates for use in a check signing machine. Lee Kennedy, the company president, and Catherine Graham, the bookkeeper, were the other authorized check writers with signature plates.

typed the memorandum on July 1, 1981, and delivered it to Gurry personally. Gurry testified that he never received the memorandum.

On July 14, 1981, a check for $10,000 was issued to Gurry on the company account. Gurry testified that he had prepared this check and used Graham's signature plate. Graham testified that, unlike the first and second checks, the July 14 check was not taken from the top of the checkbook, but rather was taken out of sequence, so that she did not discover its disappearance until several days later through an interim bank statement. Graham and Kennedy testified that, when Kennedy learned of the July 14 check, he went directly to Gurry's office, informed him that he was fired, and obtained a promissory note for the $10,000.[3] The board found that Gurry had caused the July 14 check to be issued without authority.

1. *The board's authority.* Gurry argues that the board exceeded its authority under G. L. c. 112, § 87C (*a*), because it suspended him for conduct unrelated to the practice of public accounting. In its July 14, 1983, decision, the board found that Gurry had made an unauthorized appropriation of funds from his employer, the company. The board concluded that this conduct constituted "an act discreditable to the profession [of public accounting]" in violation of 252 Code Mass. Regs. § 3.05(1). The board promulgated § 3.05(1) under its power to adopt "such rules of professional conduct as may be instrumental in fixing and maintaining high standards of integrity and dignity in the profession of public accounting." G. L. c. 112, § 87C (*a*), as appearing in St. 1963, c. 663, § 2. The board suspended Gurry's license for two years under its power to "revoke or suspend any certificate . . . [for] violation of a rule of professional conduct promulgated by the board under [§ 87C (*a*)]." G. L. c. 112, § 87C (*b*) (4), as appearing in

---

[3] In its brief, the board states that in September, 1981, a civil action was brought by the company's insurance carrier after it paid the company's claim under a policy for fraudulent or dishonest acts by an employee. The action was filed in the Superior Court in Plymouth County in order to recover the loan monies. On March 31, 1983, the loan was repaid, after an execution had been issued.

St. 1963, c. 663, § 2. Gurry contends that the conduct for which he was disciplined did not occur while he was practicing as a certified public accountant, but rather occurred when he was acting as an employee, in the capacity of treasurer, of the company and its related ventures. Gurry does not challenge the factual basis for the board's finding that he made an unauthorized appropriation of funds,[4] but rather argues, in effect, that, when acting as treasurer of the company, he was outside the scope of the board's disciplinary authority. We disagree.

We have considered the question of the scope of a regulatory board's authority in several recent cases involving other professions. In response to appeals from decisions of the Board of Registration in Medicine, we have ruled that that board has broad disciplinary authority. See, e.g., *Raymond* v. *Board of Registration in Medicine*, 387 Mass. 708, 712 (1982) (upholding revocation of physician's license for conviction of knowing possession of submachine guns); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 526 (1979) (upholding revocation of physician's license for convictions of grand larceny from Department of Public Welfare). The standard for testing the regulation in those cases was whether it "was reasonably related to the legislative purpose of promoting the public health, welfare, and safety." *Raymond, supra* at 711. Gurry contends that these cases are distinguishable because the Board of Registration in Medicine has broader authority than the Board of Public Accountancy. Since we conclude that there is a sufficiently close nexus between Gurry's profession and the misconduct found by the board to justify the exercise of its authority, it is unnecessary to decide whether the authority of the Board of Public Accountancy is as broad as that of the Board of Registration in Medicine. We do, however, conclude

---

[4] The evidence presented by Gurry at the hearing conflicted somewhat with the testimony of Kennedy and Graham. Gurry contends that Kennedy had authorized $20,000 in loans and that he had never received a memorandum from Kennedy revoking Gurry's authority to write checks. Gurry does not argue on appeal, however, that the board's finding that he made an unauthorized appropriation of funds is not supported by substantial evidence in the record.

that our decisions involving the medical board provide some guidance as to the nature of the statutory disciplinary authority granted to other such regulatory boards.

In *Raymond, supra* at 712, we held that the board "correctly found that Raymond's conviction reasonably called into question his ability to practice medicine." Similarly, we upheld the board's decision in *Levy, supra* at 526, because we agreed "with the Board's determination that the crimes of which Levy was convicted are closely related to the practice of medicine." There, the board had revoked Levy's license after he had been convicted of grand larceny from the Department of Public Welfare and of submitting false data to the Rate Setting Commission in connection with his ownership and management of eleven nursing homes. We reasoned that "an intentional misdeed relating to third-party payors [of medical expenses] reflects adversely on a physician's fitness to practice medicine." *Id.* at 527. We find ample basis in the record in the instant case to support the board's finding that Gurry's unauthorized appropriation of the company's funds reflected adversely on his fitness to practice as a public accountant and, therefore, constituted an act discreditable to the profession of public accountancy.

Gurry was initially retained by the company in 1980 when the company became a client of Gurry, O'Neill & Company. After acting as the company's outside accountant for a few months, Gurry was hired as treasurer of the company. In this capacity he organized and supervised the bookkeeping and financial planning functions of the company. By July, 1981, the month in which Gurry made the appropriation found by the board to be unauthorized, another accounting firm had been hired to act as outside accountant for the company. Gurry's responsibilities at the time of the appropriation, however, included supervision of the company's financial planning requirements. Gurry argues that, even though he was hired initially to act as the company's outside accountant and continued to perform financial services for the company at the time of the appropriation, he was not engaged in the practice of public accounting and therefore not within the board's jurisdiction. It is not necessary to decide whether Gurry was practicing as

a public accountant when acting as treasurer, because the close nexus between his unauthorized appropriation from the company and his professional status as a public accountant brings him within the board's authority so that the board could properly regulate his conduct.

In adopting regulations under G. L. c. 112, § 87C, the board must comply with the Legislature's prescription that the rules be "instrumental in fixing and maintaining high standards of integrity and dignity in the profession of public accounting." G. L. c. 112, § 87C (a). The regulation at issue subjects public accountants to board discipline for acts "discreditable to the profession." 252 Code Mass. Regs. § 3.05(1). This provision is consistent with the statutory requirement that public accountants be "of good moral character" as a prerequisite to certification. See G. L. c. 112, § 87A (a). It is, moreover, consistent with statutory provisions which recognize the board's power to discipline public accountants for certain acts involving dishonesty, fraud, or deceit. See G. L. c. 112, § 87C (b) (1), (2), (6). The statutory provisions of § 87C (b) are not the exclusive grounds for which the board may discipline a public accountant. Under G. L. c. 112, § 87C (b) (4), the board may promulgate its own rules of professional conduct, of which 252 Code Mass. Regs. § 3.05(1) is an example.

We conclude that the board's application of 252 Code Mass. Regs. § 3.05(1) to discipline Gurry was rationally related to accomplishing the legislative purpose of protecting the public welfare. See *Consolidated Cigar Corp.* v. *Department of Pub. Health*, 372 Mass. 844, 855 (1977). It was not unreasonable for the board to conclude that G. L. c. 112, § 87C (b) (4), and § 3.05(1) promulgated thereunder, authorized it to discipline a public accountant who had abused the trust accorded to him as treasurer to supervise corporate financial matters. The board disciplined Gurry for engaging in conduct indicative of a lack of financial trustworthiness. The record indicates a close connection between Gurry's practice as a public accountant and his access to the financial resources of the company. In fact, his opportunity to provide financial services for the company, as its treasurer, immediately followed and was even con-

current with a relationship in which his accounting firm served as outside accountant for the company. The board was, therefore, justified in exercising its authority to discipline conduct which could reasonably be found to be discreditable to the profession of public accountancy.

Gurry's argument receives no support from *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476 (1976), where we reversed the board's decision to revoke the license of an optometrist. There, we concluded that "there [was] serious doubt whether the plaintiff has transgressed any board rule as presently written." *Id.* at 478. We stated in dicta that the board may have exceeded its authority in disciplining the optometrist, who was not charged with professional misconduct, but rather was suspended merely because he was "moonlighting" as an optician, a profession for which he was separately licensed. *Id.* at 479-480. We concluded that the board "lacks the authority to regulate the activities of opticians." *Id.* at 480. In the instant case, Gurry was not engaged in another, separately regulated profession. Furthermore, he was found to have engaged in conduct not authorized by his employer. As treasurer, he performed certain financial functions similar to those performed by public accountants.[5] During the course of his employment in this capacity, he engaged in conduct which exceeded the scope of his authority. Thus Gurry falls within the jurisdiction of the board for purposes of the misconduct at issue in this case.

2. *Constitutionality of 252 Code Mass. Regs. § 3.05(1).* As a preliminary matter, the board contends that we should refrain from addressing the merits of the constitutional claim because Gurry failed to raise it during the hearing before the board. "The general rule is that it is too late to raise a claim before a reviewing court if the point had not been raised before the administrative agency." *M. H. Gordon & Son* v. *Alcoholic Beverages Control Comm'n*, 386 Mass. 64, 68 (1982), citing

---

[5] The record indicates that, while serving as treasurer of the company, Gurry continued to act as outside accountant to at least two real estate holding companies related to the company. Further, Gurry, O'Neill & Company continued to prepare financial compilations for the company at least until May, 1981.

*Charron's Case*, 331 Mass. 519, 523 (1954). We have stated that "[a] party is not entitled to raise arguments on appeal that he *could have raised, but did not raise*, before the administrative agency . . ." (emphasis added). *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 493 (1983). There may be circumstances, however, in which it is appropriate to consider a claim which is raised for the first time before the court reviewing the agency's decision. See *M. H. Gordon & Son*, *supra* at 69 (justice served by considering antitrust claim not raised earlier, because commission had "made it clear" it would not rule on the issue and because a Supreme Court decision arguably modified the law). "There may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below . . . ." *Albert, supra* at 494, quoting *Hormel* v. *Helvering*, 312 U.S. 552, 557 (1941). Except for jurisdictional claims based upon constitutional challenges to an agency's enabling legislation, litigants involved in adjudicatory proceedings should raise all claims before the agency, including those which are constitutionally based. Although we concluded that Gurry's constitutional claim in this case does not fall within that class of exceptional cases which we consider as a matter of discretion, we nevertheless add the following discussion in order to give guidance to the board and other similar rule making agencies.

We address the merits of Gurry's claim that 252 Code Mass. Regs. § 3.05(1) is unconstitutionally vague so that its application to him violated his due process rights. The board found that Gurry had made an unauthorized appropriation of $10,000 of the company's funds, and concluded that this constituted "discreditable conduct for a certified public accountant" in violation of G. L. c. 112, § 87C (*b*) (4), and 252 Code Mass. Regs. § 3.05(1). Gurry contends that the standard "an act discreditable to the profession" in § 3.05(1) is not sufficiently specific and therefore is unconstitutionally vague. We conclude that, as a rule which regulates business activities, 252 Code Mass. Regs. § 3.05(1) is not penal in nature, does not affect First

Amendment rights, and is not unconstitutionally vague as applied in this case.

"A law is void for vagueness if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Caswell* v. *Licensing Comm'n for Brockton*, 387 Mass. 864, 873 (1983), quoting *Connally* v. *General Constr. Co.*, 269 U.S. 385, 391 (1926). "[L]aws which merely regulate business activities need not contain criteria as precise and definite as laws which affect First Amendment freedoms. . . . Similarly, statutes that do not define or relate to criminal conduct need not be drawn as precisely as statutes that touch upon criminal acts. . . . [If] neither First Amendment freedoms nor criminal conduct are concerned . . . we limit our vagueness analysis to whether [the statute or regulation] is unconstitutionally vague as applied in [the particular] case . . . ." *Caswell, supra. Aristocratic Restaurant of Mass., Inc.* v. *Alcoholic Beverages Control Comm'n (No. 1)*, 374 Mass. 547, 552, appeal dismissed for want of a substantial Federal question, 439 U.S. 803 (1978). "[If] the statute merely regulates business activity . . . we need not consider whether the statute might be unconstitutionally vague in other circumstances." *LaPointe* v. *License Bd. of Worcester*, 389 Mass. 454, 460-461 (1983). See *Caswell, supra*.

Revocation or suspension of a physician's license is not penal or criminal in nature. See *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 316-317 (1981); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 527 (1979). In *Levy, supra*, we reasoned that "revocation of a physician's license . . . is designed not to punish the physician for his crimes but to protect the public health, welfare, and safety." Cf. *Deluty* v. *Commissioner of Ins.*, 7 Mass. App. Ct. 88, 91 (1979) (revocation of insurance broker's license not a criminal proceeding requiring greater particularity in statutory standard). Similarly, the suspension at issue in the instant case affects Gurry's ability lawfully to pursue an occupation as a public accountant, and does not implicate any criminal sanctions. We conclude that in suspending Gurry the board has exercised its statutorily granted power to regulate

the profession of public accounting and has not imposed a sanction qualifying as penal or criminal.[6]

"As a general matter, a statute which merely regulates business interests need not specify with great particularity the relevant considerations with respect to whether to revoke a license. . . . It is enough that the board exercise its discretion fairly and not act in an arbitrary and capricious manner." (Citations omitted.) *LaPointe, supra* at 462. The board promulgated 252 Code Mass. Regs. § 3.05(1) pursuant to its statutory objectives of "maintaining high standards of integrity and dignity in the profession of public accounting," G. L. c. 112, § 87C (*a*), and of ensuring that public accountants are "of good moral character." G. L. c. 112, § 87A (*a*) (4). Gurry's conduct appears to raise grave doubt as to his trustworthiness in financial matters. The board could reasonably find that a two-year suspension for the unauthorized appropriation was consistent with its responsibility to maintain "high standards of integrity and dignity in the profession."[7]

3. *Interim stay.* Because the issue has become moot, it is not necessary for us to address the board's argument that, under G. L. c. 112, § 64, the single justice erred in staying its decision pending review by this court. Some additional comments for the guidance of single justices of this court are, however, appropriate. We do not read G. L. c. 112, § 64, as prohibiting the issuance of a temporary stay in all circumstances.

General Laws c. 112, § 64, as amended by St. 1954, c. 681, § 9, provides, in part: "The supreme judicial court, upon petition of a person whose certificate, registration, license or authority has been suspended, revoked or cancelled, may enter

---

[6] Gurry's reliance on *Saxon Coffee Shop, Inc.* v. *Boston Licensing Bd.*, 380 Mass. 919, 925 (1980), is, therefore, misplaced. In that case, we applied the higher criminal standard because "[t]he gravamen of the charge" involved assisting prostitutes to solicit business and to avoid the police, which could have subjected Saxon to criminal prosecution. *Id.*

[7] Gurry argues that the board's decision is arbitrary and capricious in light of its findings in other recent disciplinary cases. We conclude that there is an insufficient showing in the record to permit a determination of unfair discrimination or disparity in the board's disciplinary rulings.

a decree revising or reversing the decision of the board, in accordance with the standards for review provided in [G. L. c. 30A, § 14 (7)] . . . ." It has long been the tradition in the Commonwealth that such petitions be reviewed by a single justice who may then enter a judgment affirming, revising, or reversing the board's decision. See, e.g., *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 300, 304 n.11 (1981); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 520 (1979); *Harris* v. *Board of Registration in Chiropody (Podiatry)*, 343 Mass. 536, 537 (1962); *Giroux* v. *Board of Dental Examiners*, 322 Mass. 251 (1948); *Ott* v. *Board of Registration in Medicine*, 276 Mass. 566, 572-573 (1931); *Dugdale* v. *Board of Registration in Medicine*, 270 Mass. 65, 67 (1930). See also *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424, 427 (1921).

Section 64 further provides, in relevant part, that "prior to the entry of [a decree revising or reversing the board's decision], no order shall be made or entered by the court to stay or supersede any suspension, revocation or cancellation of any such certificate, registration, license or authority." The board argues that the temporary stay could be valid only if it rested upon a finding that § 64 is unconstitutional. We do not read § 64 so narrowly.

In *Flynn* v. *Board of Registration in Optometry*, 320 Mass. 29 (1946), we considered the constitutionality of G. L. c. 112, § 64, in light of a challenge that it violated due process. There, we held that there was no violation of fundamental rights in withholding a temporary stay during the period between the board's decision and the entry of a final decree by the court reviewing the order. We found support for this holding in "the many safeguards in the statute ensuring an adequate hearing in the first instance before the board." *Id.* at 34. We reasoned that "[t]he Legislature may have thought that the professions and callings to which this statute was applicable were such that the public health, safety, and welfare might be protected better if a stay were forbidden." *Id.* Although we acknowledged that "the right to follow a legitimate calling is . . . protected by the Constitution of the United States and that of this Com-

monwealth," we concluded that it is "not absolute and 'must yield to the paramount right of government to protect the public health by any rational means.'" *Id.*, quoting *Lawrence* v. *Board of Registration in Medicine*, 239 Mass. 424, 428 (1921). The no-stay provision of G. L. c. 112, § 64, is a proper exercise of the Legislature's police power because the restriction is rationally related to the State's interest in protecting the public welfare by barring unqualified or disciplined persons from professional practice. As we suggested in *Flynn*, however, there may be circumstances in which an interim stay is necessary to protect constitutional rights.

Section 64 must be read consistently with the court's inherent power to provide whatever relief is appropriate to protect constitutional rights. As we recognized in *Flynn, supra* at 33, "there may be situations where the enforcement of an administrative order may be challenged as denying due process by reason of the fact that no stay is permitted pending a review by the courts." When a petitioner presents a bona fide claim that the board's decision violates his constitutional rights, interim relief may be appropriate.

In *Flynn, supra* at 34, we left open the question whether an interim stay might be appropriate when the petitioner claims a violation of procedural due process at the hearing provided by the board. Although this issue is not now before us, we would be reluctant to conclude that a single justice may not issue a temporary stay when the petitioner raises a substantial procedural due process claim in which the prerequisites for issuing equitable relief are otherwise present.

The action is remanded to the single justice with directions to enter a judgment affirming the decision of the board.

*So ordered.*