COMMONWEALTH *vs.* JOSEPH L. RACINE, JR.

Worcester.   February 7, 1977. — May 31, 1977.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Lead Poisoning Prevention.   Administrative Agency,* Regulation.   *Regulation.*

A regulation promulgated by the lead poisoning control director providing that each day's failure to comply with orders issued pursuant to the State Sanitary Code constituted a separate violation was within the statutory grant of authority to the director under G. L. c. 111, §§ 127A, 197, 198. [635-639]

A regulation promulgated by the lead poisoning control director declaring that violations of G. L. c. 111, § 197, constituted emergency matters pursuant to § 198 and within the meaning of the State Sanitary Code, article I, section 5.1, was within the director's statutory grant of authority under § 198. [639-641]

COMPLAINTS received and sworn to in the Central District Court of Worcester on March 19, 1975.

On appeal to the Superior Court the cases were heard by *Landers,* J., a District Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Milton H. Raphaelson* for the defendant.

*Robert A. Stolzberg,* Special Assistant Attorney General, for the Commonwealth.

LIACOS, J.   On March 18, 1975, two complaints in the Central District Court of Worcester charged the defendant with failure to comply with an order from the director of the lead poisoning prevention program directing the defendant to remove or cover lead paint found in two units

of residential premises owned by him in which a child or children under six years of age resided. See G. L. c. 111, §§ 197, 198. He was found guilty on April 8, 1975, and thereupon took an appeal in both cases to the Superior Court.

The defendant filed in the Superior Court a motion to dismiss the complaints. He based his motion on the contention that the administrative regulations which define the offense for which he was charged were promulgated "in excess of the authority" granted by the Legislature and, hence, invalid. The motion was denied. The defendant also excepted to the introduction in evidence of these regulations, namely, the State Sanitary Code (code) and Regulations for Lead Poisoning Prevention and Control. The defendant was found guilty by the trial judge in a jury waived proceeding. He was fined $250 on one complaint. The other was filed. The defendant appealed to the Appeals Court and we transferred the case here on our own motion. The case is before us on the defendant's bill of exceptions. We affirm.

In 1971, the Legislature enacted St. 1971, c. 1081, an emergency act, entitled "An Act providing for a comprehensive program of lead paint poisoning prevention and control." Among its various provisions, which are now codified in G. L. c. 111, §§ 190-199, the act required the Department of Public Health to "establish a statewide program for the prevention, screening, diagnosis and treatment of lead poisoning, including elimination of the sources of such poisoning . . . ." G. L. c. 111, § 190. The statute also authorized the appointment of a lead poisoning control director and required him, inter alia, to establish a program for the early diagnosis of cases of lead poisoning, G. L. c. 111, § 193, and a program for the "detection of sources of lead poisoning." G. L. c. 111, § 194, as amended by St. 1974, c. 449, § 1. The last two mentioned sections require the director to devote considerable effort to the detection and diagnosis of lead poisoning in children under six years of age.

Consistent with this, G. L. c. 111, § 197, requires the

owner of residential property to take affirmative measures[1] to eliminate any sources of lead paint poisoning in any residential premises where a child under six is either residing or will reside due to a change in occupancy of those premises.[2]

General Laws c. 111, § 198, as amended by St. 1974, c. 449, § 2, provides that violations of § 197 "may be treated by any party as a violation of the state sanitary code and all procedures and remedies applicable to such violations of said sanitary code shall be available to correct, deter or punish violations of said ... [section]." The same section vests the director with all powers and authority granted to local boards of health (G. L. c. 111, §§ 127A-127K) to enforce said provision. The effect of this provision is, as the defendant concedes, to empower the director of the lead paint program to act under G. L. c. 111, § 127A, and promulgate "rules and regulations as, in its opinion, may be necessary ... provided, such rules and regulations do not conflict with the laws of the commonwealth or the provisions of the code." The dispute in this case is not whether the power exists but whether it has been rightfully exercised.

Pursuant to this power the director promulgated Regulations for Lead Poisoning Prevention and Control on April 6, 1973, October 16, 1974, December 3, 1974, and on April 18, 1975. The regulation applicable at the time of trial was regulation 5.5, promulgated on October 16,

---

[1] "This duty shall apply to every owner of residential premises whenever a child or children under six years of age reside therein or whenever such premises undergoes a change of ownership and as a result thereof a child or children under six years of age shall reside therein, whether or not his premises have been inspected pursuant to section one hundred and ninety-four or otherwise."

[2] The defendant has sought to raise the issue as to whether the term "residential premises" as used in G. L. c. 111, § 197, applies to an entire multidwelling building taken as a single unit or to the individual dwelling units contained therein. Since the second complaint in this case, which concerned a second unit within the same building, was filed with the consent of the defendant, we do not consider the issue properly before the court. Consequently, we intimate no opinion on the matter.

Commonwealth *v.* Racine.

1974, which is identical to the current regulation 5.9 (a), promulgated on April 18, 1975. The regulation provides that the director and local boards of health may treat lead paint violations as violations of the State Sanitary Code, and further provides: "Any person who shall fail to comply with any order issued pursuant to the provisions of this code shall upon conviction be fined not less than ten nor more than five hundred dollars. Each day's failure to comply with an order shall constitute a separate violation." The regulation then cites article I, regulation 10.2, of the code as the source of its authority. That provision is identical to that contained in the lead paint regulation 5.5 (a) (currently 5.9 [a]). It is this definition of the term "separate violation" which is one basis of the defendant's bill of exceptions.

The defendant's other argument, also covered by his bill of exceptions, has for its basis lead paint regulation 11 (currently the same as at the time of trial). That regulation states that violations of § 197 "produce immediate danger of lead poisoning and constitute emergency matters pursuant to ... [§ 198] and within the meaning of the State Sanitary Code, article I, section 5.1[3] .... Therefore, ... enforcement agencies shall follow the time limitations established in regulations 12 and 15-17." These regulations

---

[3] "5.1 GENERAL. Whenever an emergency exists in which the interest of protecting the public health requires that ordinary procedures be dispensed with, the board of health or its authorized agent, acting in accordance with the provisions of Section 30 of Chapter 111 of the General Laws, may, without notice or hearing, issue an order reciting the existence of the emergency and requiring that such action be taken as the board of health deems necessary to meet the emergency. Notwithstanding any other provision of this code, any person to whom such order is directed shall comply therewith within the time specified in the order. Each day's failure to comply with the order shall constitute a separate offense. Upon compliance with the order and within seven days after the day the order has been served, he may file a written petition in the office of the board of health requesting a hearing. He shall be granted a hearing as soon as possible but not later than ten days after the filing of the petition. The procedures for such hearing shall otherwise conform with the hearing requirements which would have existed had the order been issued under non-emergency circumstances."

require the agency to report a finding of a high level of
lead to the owner and affected tenants (as well as various
other parties) informing them that the level of lead is
considered a violation of the State Sanitary Code "which
may endanger or materially impair the health of occu-
pants, especially children" (regulation 15.3). These regula-
tions also empower the director in that situation to issue
an order requiring proper remedial measures (*id.*). If that
order is not complied with in seven days, the director is
authorized to institute judicial proceedings to obtain com-
pliance (regulation 17.1).[4]

1. The defendant's first contention is that neither G. L.
c. 111, §§ 197, 198, nor § 127A, specifically authorizes daily
penalties for failure to obey orders to correct conditions
which are in violation of the statute and that the "cre-
ation" thereof in the regulation constitutes the improper
exercise of a legislative power by an administrative agency.

To support his proposition that the creation of such
penalties is beyond the permissible scope of the legislative
grant of power the defendant relies on *Commonwealth* v.
*Diaz,* 326 Mass. 525 (1950). In *Diaz* we struck down a
regulation providing a flat penalty for violations of traffic
control regulations at Logan airport. We did so on the
ground that the imposition of the same penalties for all
offenses was not consistent with the implicit legislative
intent to have the seriousness of the penalty commen-
surate with the seriousness of the violation. We reaffirmed
in *Diaz,* however, the established principle that the Legis-
lature may delegate to a board or an individual officer the
working out of the details of a policy adopted by the Leg-
islature. *Id.* at 527. If the regulations are within the am-
bit of the enabling statute, they will be considered valid.
*Diaz* also recognized that the Legislature may delegate to
a nonlegislative body the authority under proper statutory
guidelines to define more precisely by regulation the na-

---

[4] The defendant appears to contend that seven days is not an ade-
quate amount of time to correct the condition and is thus invalid.

ture of an offense and to fix penalties within set limits.[5]

The defendant's argument that the regulation at issue is outside the statutory limits is based on the proposition that the Legislature did not specifically provide for daily penalties in § 197 or § 198, and that this is an implicit rejection of such a penalty. As evidence that the Legislature would have so provided if it had in fact so intended, the defendant directs our attention to G. L. c. 111, § 150A, and to G. L. c. 131, § 40, which include such specific legislative provisions.

The circumstances pertaining to the enactment of the last two statutes are distinguishable from those of the statute here involved. Neither G. L. c. 111, § 150A, nor G. L. c. 131, § 40, had at the time of its enactment an available body of administrative regulations concerning the area of the statutory enactment which the Legislature could use as a reference for the enforcement scheme. Here, at the time St. 1971, c. 1081, was enacted, there was such an existing body of administrative regulations in the State Sanitary Code. We assume that the Legislature was aware of the contents of that code, including its provision for daily offenses, when it enacted c. 1081 (now G. L. c. 111, §§ 190-199). The contents of that code are substantial evidence that the legislative reference to it in § 198 included therein an authority similarly to define offenses under the lead paint statute.

In enacting § 198, and making specific reference to the code, which had been adopted two years prior, the Legislature is presumed to have been familiar with its contents. *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass. 610, 614 (1957). Since such daily penalties were in the code as it existed at the time of enactment of §§ 197, 198, the legislative intent must be ascertained on the basis of a presumed legislative knowledge of the code provisions,

---

[5] We note that the statutory standard within which the director may act to define the penalty and offense is more detailed than that apparent from the statute in *Diaz.* See *Harborview Residents' Comm., Inc.* v. *Quincy Housing Auth.,* 368 Mass. 425 (1975).

and the Legislature's intent as indicated in the statute, to make those provisions part of the enforcement scheme.

Viewed in this light, we believe that in making reference to the provision of the code the Legislature was cognizant of the provision for daily penalties contained in article I, regulation 10.2, and was indicating that such penalties should be part of the scheme of enforcement for the lead paint law. We note further, while it is by no means conclusive, the director's interpretation of §§ 197 and 198, first appeared in the regulations published on October 16, 1974, and the Legislature has made no effort to change the underlying statutory scheme in a manner which would suggest that the expression of regulatory power was inconsistent with legislative intent. *Harborview Residents' Comm., Inc.* v. *Quincy Housing Auth., supra.*

This view of the meaning of the statutory provision is amply supported by the underlying policies which are readily apparent in the entire statutory scheme. Most significant is the nature of the evil and the concomitant scope of the offense found in § 197. The offense set forth in that section is not the presence of lead paint per se in residential premises inhabited by a child under six but the failure to remedy that situation when a child under six is an occupant. Thus, the violation is the continuing presence of the prohibited element after it should have been removed. If continuing presence is the evil, then we cannot say that the director went beyond the bounds of the legislative grant of power in providing for daily penalties for noncompliance with a remedial order. If indeed we accept the apparent premise of the law that it is the continuing presence of lead based paint which will result in a continuing threat of harm to children under six, then any other interpretation might render the statute ineffective to the point where a property owner might find it more viable to accept the fine rather than correct the condition. Such a result would be at odds with the statutory mandate to construe the section "so as to best protect the safety of residents of such dwellings." G. L. c. 111, § 197.

The defendant argues, however, that the provisions of G. L. c. 111, § 196, indicate that in drafting the entire statutory scheme the Legislature indicated its intention to authorize daily penalties or their equivalent by specific language to that effect. The defendant argues that the absence of such language in either § 197 or § 198 demonstrates a legislative intent that there be no daily penalties for violations under those sections. We disagree for reasons previously stated.

General Laws c. 111, § 196, inserted by St. 1971, c. 1081, §§ 1, 2,[6] provides in pertinent part for the creation of penalties analogous to daily penalties in that it provides, inter alia, that distribution or application of products containing prohibited levels of lead shall be viewed as a number of separate violations. As such it is consistent with the approach taken by the drafters of the State Sanitary Code.

In addition, the penalty provision of § 196 is a strong indication of the degree and extent to which the Legislature felt that violations of the lead paint law should be punished. The potential fines which could be envisioned under the provisions of § 196, set forth in note 6, *supra,* are of substantial magnitude. In light of the special treatment which the Legislature evidently intended for cases of lead paint in residential premises in which children under six reside, we cannot believe that they intended that

---

[6] "Any person who violates the provision of this subsection shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars for each violation. Each article, surface or fixture to which a lead-based substance is applied shall constitute a separate violation. Any person who willfully violates the provisions of this subsection shall be punished by imprisonment for not more than three months for each violation.
. . . .

"Whoever violates the provisions of this subsection shall be punished by a fine of not less than two hundred dollars nor more than five hundred dollars for each violation. Each can, bottle or other container of any prohibited substance shall constitute a separate violation. Whoever willfully violates the provisions of this subsection shall be punished by imprisonment for not more than six months for each violation. Any article or substance in violation of this subsection may be embargoed by the director in the manner provided in section one hundred and eighty-nine A of chapter ninety-four."

any penalty intended as a source of punishing the violation was meant to be limited to just the failure to remove, without any consequence for a continuing failure to comply with a remedial order. If this were the case, the Legislature would in effect have been treating the special and most serious situation a good deal less severely than one not singled out for special enforcement. Moreover, the defendant's interpretation might leave the Commonwealth without either an adequate means to punish violators of the law in cases concerning children under six or an adequate deterrent to those who might resist compliance. Both of these goals are explicitly set forth in G. L. c. 111, § 198, and we cannot attribute to the Legislature an intent to cripple enforcement of a law in an area which it has singled out for special concern. We hold, therefore, that the director acted within the statutory grant of authority in promulgating lead paint regulation 5.5 (a) (now 5.9 [a]).

2. The defendant's other contention is that the director's assignment of emergency status to violations of § 197, including these violations, is in excess of the director's statutory authority. All that is at issue in this case is whether the power is validly exercised concerning premises in which a child under six is residing. The defendant bases his argument on the premise that if the Legislature had intended that all lead paint violations of this kind should be treated as emergency matters it would have said so explicitly. The defendant concedes, as he must, that G. L. c. 111, § 198, states in part: "Violations of ... [§ 197] shall be treated as emergency matters *and* shall be given preference by enforcing agencies and speedy hearings by district and superior courts" (emphasis supplied). However, the defendant argues that the sole effect of this provision is to suggest the proper allocation of administrative and judicial resources. We disagree.

So much of the statutory language as directs the responsible agencies to grant preference to enforcing the statute stands on its own footing. See, e.g., G. L. c. 111, § 193. The language of § 198 indicates that such violations

are to be treated as emergency matters requiring prompt action by owners of residential property in which children under six reside, and by the administrative agencies and the courts. Indeed, the specific language of § 198 is consistent with the legislative purpose manifest throughout the entire statute.

That this is the intent of the Legislature is bolstered by the reference in § 198 to the State Sanitary Code. The code recognized the existence of such "emergency" matters, article I, regulation 5.1. See G. L. c. 111, §§ 127A-127K. In particular, G. L. c. 111, § 127B, allows the enforcing authority to take affirmative action to ensure compliance if violations of the code are not corrected within a "reasonable time." That which is reasonable of course depends on the circumstances. In St. 1971, c. 1081, there is a legislative finding of fact that high levels of lead present a grave danger to children. We cannot say that the director has operated in an arbitrary manner in either (1) invoking the provision of regulation 5.1 of the code, or (2) setting forth the time limits in regulation 17 even in the absence of such a formal declaration, given the statutory provision.[7] If the goal of the statute is to remove the offending condition, and if the danger to the class of children under six is particularly acute, then speed is necessary.[8]

The defendant has argued in reliance on *Commonwealth* v. *Badger*, 243 Mass. 137 (1922), that the administrative exercise of discretion in dealing with emergencies is without standards. We disagree. It appears to us that the Legislature has authorized treating these cases as

[7] The defendant's counsel suggested at oral argument that the declaration was invalid in so far as it covered both situations where illness developed as a result of the high level of lead, a situation where the declaration was concededly valid, as well as that wherein only a high level of lead which had not yet produced illness was present. The argument is without merit.

[8] Any suggestion that the director should authorize evicting the tenants rather than order removal of the lead paint seems inconsistent with the mandate of § 197. That section clearly imports that the problem and not the potential victims should be removed.

emergencies. Unlike the situation in *Badger,* not only are the guidelines for the proper remedy established in the statute but they have been filled out in detail by regulations which have not been challenged here. The situation in *Badger* was to the contrary. As distinguished from *Badger,* the necessary pre-conditions for invoking the emergency standards are set forth in the statute and supported by implicit legislative fact findings concerning children under six which have not been challenged by the defendant. We hold, therefore, that the director acted within the power granted by the statute not only in incorporating the provisions of regulation 5.1 of the State Sanitary Code in the enforcement scheme but also in promulgating the time requirements.

*Exceptions overruled.*