Figueroa *v.* Director of the Department of Labor and Workforce Development.

## Fausta Figueroa *vs.* Director of the Department of Labor and Workforce Development.

No. 99-P-407.

Suffolk. March 8, 2001. - February 28, 2002.

Present: Brown, Rapoza, & McHugh, JJ.

*Employment Security,* Eligibility for benefits, Training program. *Division of Employment and Training. Administrative Law,* Regulations, Retroactive effect of regulation.

In a proceeding seeking statutory unemployment compensation benefits available to persons engaged in certain employment training programs, the conclusion of the director of the Department of Labor and Workforce Development that laboratory work done by the plaintiff applicant was not "supervised classroom training" was not, on the record presented, arbitrary, capricious, an abuse of discretion, or an error of law [68-69]; however, this court, concluding that the director's decision failed to take into account a "curative" amendment to the department's governing regulation that must be applied retroactively to this case, vacated a District Court judgment upholding the director's decision and remanded the case to that court with instructions to remand the matter to the director for consideration of the plaintiff's application in light of the amended regulation. [69-73] Rapoza, J., dissenting.

Civil action commenced in the West Roxbury Division of the District Court Department on March 7, 1997.

The case was heard by *Robert C. Rufo*, J.

*Andrew Kisseloff* for the plaintiff.

*Maria Makredes*, Assistant Attorney General, for the defendant.

McHugh, J. This case involves regulations governing statutory unemployment compensation benefits available to people engaged in training programs designed to provide them with new skills they need to obtain employment. The appellant, Fausta Figueroa, was engaged in such a program at Bunker Hill

Community College, and she applied for those benefits. The division of employment and training (DET)[1] denied her application because the Bunker Hill program did not consume enough hours each week or provide enough credits each semester to satisfy criteria contained in the governing DET regulation. In denying Figueroa's application, however, DET failed to consider a potentially critical change to the regulation that became effective while her application was proceeding through administrative channels. Consequently, we remand for further consideration.

The material facts giving rise to the present dispute are relatively straightforward when considered in the context of the statutory scheme governing unemployment compensation benefits. Consequently, we start there.[2]

General Laws c. 151A, § 24, contains the basic requirements an unemployed person must meet to obtain benefits for which the statute provides. There is no question in this case that Figueroa met all requirements with the possible exception of a requirement contained in § 24(*b*). That section (as appearing in St. 1992, c. 26, § 18) requires benefit recipients to "[b]e capable of, available, and actively seeking work in [their] usual occupation or any other occupation for which [they are] reasonably fitted . . . ." See also § 25(*c*).

An applicant who qualifies for benefits is assigned a "weekly benefit rate" based on his or her earnings during the twelve months immediately before filing the benefit application. G. L. c. 151A, § 29(*a*), as appearing in St. 1983, c. 45, § 6. Ordinarily, the maximum available benefit is the lesser of thirty times the "weekly benefit rate" or thirty-six percent of the wages the applicant earned during the preceding year, plus a

---

[1]The DET is a component of the Department of Labor and Workforce Development. G. L. c. 151A, § 1(*g*), as appearing in St. 1999, c. 151, § 450. See also note 3, *infra*.

[2]As one might expect, the statute governing unemployment compensation benefits is complex and contains a number of exceptions to virtually every general rule it promulgates. The vast majority of those exceptions have nothing to do with this case. Consequently, the following discussion sets out the general rules and deals with the exceptions only when material.

very modest allotment for dependent children. G. L. c. 151A, § 30(*a*). However,

> "[i]f in the opinion of the commissioner,[3] it is necessary for an unemployed individual to obtain further industrial or vocational training to realize appropriate employment, the total benefits which such individual may receive shall be extended by up to eighteen times the individual's [weekly] benefit rate, if such individual is attending an industrial or vocational retraining course approved by the commissioner . . . ."

G. L. c. 151A, § 30(*c*), as appearing in St. 1992, c. 118, § 9. Logically, attendance at an approved course satisfies the "availability for work" requirements of § 24(*b*). See c. 151A, § 24(*c*).

DET, which is charged with responsibility for administering the benefit program, promulgated regulations containing, among other things, the characteristics a training program had to have in order to obtain the commissioner's approval for purposes of § 30(*c*). At the time Figueroa first applied for benefits, the regulation of consequence here, 430 Code Mass. Regs. § 9.05(2)(c)(1) (1993), required that a course of training

> "[b]e a full-time course, providing a minimum of at least 20 hours of supervised classroom training[4] per week; provided, however, that:
>
> 1. if the program is offered by a community college, college, or university, this requirement shall be met if the program provides at least 12 credit hours per week for a minimum of 12 credits each semester. . . ."

Turning from law to facts, Figueroa, finding herself unemployed and having a child in her care, applied for basic unemployment benefits on October 22, 1996. At the time she

---

[3]The "Commissioner" is the Director of the Department of Labor and Workforce Development acting through the deputy director for the division of employment and training. G. L. c. 151A, § 1(*e¹/₂*), as appearing in St. 1996, c. 151, § 449. For the rest of this opinion, that person will simply be referred to as "the commissioner."

[4]The regulation defined "classroom training" as "supervised training of the type normally conducted in an institutional setting, including vocational education, which may be provided to individuals who meet the conditions for approval of training." 430 Code Mass. Regs. § 9.03 (1993).

applied, and for several years before, she was pursuing an associate of science degree at Bunker Hill and was enrolled in the college's "Medical Office Administration Degree Program."

On October 22, Figueroa was enrolled in four courses. Those courses met for a total of twelve hours of traditional classroom instruction each week and entitled her to a total of twelve semester credits. On November 12, 1996, however, she withdrew from one of the courses and thus was left with three courses meeting for a total of nine classroom hours each week and providing a total of nine semester credits.

All three courses were technical in nature. According to the unchallenged statement of a Bunker Hill representative contained in an exhibit introduced at an administrative hearing, satisfactory completion of the courses required Figueroa's participation in a total of "at least 20 to 30 additional [computer] lab hours each week," i.e., computer lab hours over and above the hours she spent each week in a traditional classroom. The record reveals that the computer lab was staffed at all times by proctors, teaching assistants, or faculty members who were there to answer student questions and help students find solutions to problems they were encountering as they performed their lab assignments. The lab staff, however, provided assistance only when students sought it. Staff members did not routinely volunteer assistance or initiate oversight of student efforts.

On November 15, 1996, three days after dropping her fourth course, Figueroa applied for extended benefits under § 30(c). The commissioner denied her application and accompanied that denial with a denial of her October 22 application for basic benefits. The commissioner's denial of the applications triggered an extended administrative process the details of which now are of no particular moment. Ultimately, the commissioner[5] concluded that Figueroa was not entitled to benefits, regular or extended, because (1) the Bunker Hill program did not provide "at least 12 credit hours per week for a minimum of 12 credits"

[5]Actually, the final administrative decision was made by the board of review of the Department of Labor and Workforce Development. The board's composition and power in such matters are set out in G. L. c. 23, § 9N(b), and G. L. c. 151A, §§ 1(d) & 41. Under G. L. c. 151A, § 41(c), however, the board's final decision denying benefits is deemed to be the commissioner's decision.

for each semester and (2) the program did not provide at least twenty hours of "supervised classroom training" each week.[6]

Figueroa appealed the commissioner's decision to the District Court, the forum designated for such appeals by G. L. c. 151A, § 42. The District Court, which has the power to review the commissioner's decisions under standards set out in G. L. c. 30A, § 14(7), see c. 151A, § 42, affirmed. This appeal followed.

The commissioner's first ground for denying Figueroa's application was surely correct. Nine classroom hours are not twelve classroom hours and nine semester credits are not twelve. Figueroa makes no contrary claim.

Figueroa does argue, however, that the second ground for the commissioner's decision was arbitrary, capricious, and an error of law. She asserts that weekly attendance at twenty to thirty hours of lab sessions attended by trained members of the Bunker Hill staff plus her nine weekly hours of traditional classroom attendance amounts to far more than the twenty hours of "supervised classroom training" the regulation requires. In response, the commissioner asserts that the labs did not provide the plaintiff's "supervised classroom training" and thus that Figueroa's course of study did not satisfy the twenty-hour requirement.[7]

---

[6]The commissioner's denial of Figueroa's application for regular benefits rested on his conclusion that Figueroa was not "available" for work within the meaning of § 24(b) because she was enrolled in an unapproved school program that left her no time to seek, obtain, or maintain a job. Figueroa does not suggest that she in fact could have sought or maintained a job and continued with her studies. On this record, therefore, Figueroa's schooling either qualified her for both regular and extended benefits or prevented her from obtaining any benefits at all.

[7]The commissioner also argues that, although he discussed the twenty-hour standard in his decision denying Figueroa's application, that standard is in fact unavailable to her. He asserts that, properly construed, 430 Code Mass. Regs. § 9.05(2)(c) (1993) permits him to approve a course of study at a college, university, or community college only if that course of study satisfies the credit-hour requirements of the proviso contained in 430 Code Mass. Regs. § 9.05(2)(c)(1). The commissioner's construction of DET regulations is, of course, entitled to deference, but that deference stops at the edge of clear error. *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976). In the last analysis, a regulation, like a statute, must be construed in a manner designed to advance the regulation's manifest goals. See *Young's*

One can sensibly contend that the labs Figueroa was required to attend contained enough supervision, i.e., "direction, inspection, and critical evaluation: oversight, superintendence," Webster's Third New International Dictionary 2296 (1993), to qualify as "supervised classroom training." One can also sensibly contend that those labs were simply a place where Figueroa could perform homework with the mechanical and human resources necessary for her to do so successfully. Under the latter view, her lab work was functionally indistinguishable from, say, research for an English paper at the Boston public library with assistance as needed from a capable and helpful librarian.

In the last analysis, close questions like these are precisely the kinds of questions the law commits to the commissioner for his resolution. See *Director of Div. of Employment Security* v. *Fingerman*, 378 Mass. 461, 463-464 (1979); *Reed Natl. Corp.* v. *Director of Div. of Employment Security*, 393 Mass. 721, 722-723 (1985); *Boguszewski* v. *Commissioner of Dept. of Employment & Training*, 410 Mass. 337, 345 (1991). On this record, we cannot say that the commissioner's conclusion that the lab work was not "supervised classroom training" was arbitrary, capricious, an abuse of discretion or an error of law.

Ordinarily, that would end the matter. Figueroa's program did not generate twelve credit hours per week and the commissioner permissibly concluded that the program did not involve twenty weekly hours of "supervised classroom training." Effective January 24, 1997, after Figueroa submitted her application and while that application was wending its way through the administrative process,[8] however, DET amended the relevant

*Court, Inc.* v. *Outdoor Advertising Bd.*, 4 Mass. App. Ct. 130, 133-134 (1976). It is plain both from the text and from the purpose of the regulation that the twelve credit-hour proviso, see *Rubin* v. *Prescott*, 362 Mass. 281, 287 n.6 (1972), was created to allow the commissioner to approve programs that, although valuable and rigorous, would be unlikely to meet the generally applicable twenty-hour requirement. The credit-hour proviso thus provides for an alternative, not an exclusive, basis for approval of courses provided by colleges, universities, or community colleges.

[8]When the change became effective, Figueroa's application for review of a hearing examiner's decision adverse to her application was pending before the board of review. See generally G. L. c. 151A, §§ 39-41.

regulation to relax the rigor of the twelve-credit requirement. As amended on January 24, the regulation read as follows:

> "1. if the program is offered by a community college, college, or university, [the 20-hour] requirement shall be met if the program provides a minimum of 12 credits each semester *or the equivalent . . ."* (emphasis supplied).

430 Code Mass. Regs. § 9.05(2)(b)(1) (1997).[9] The commissioner did not mention the amended regulation in his decision and thus did not assess the degree, if any, to which the emphasized language changed the result the superseded language had produced.[10]

As a general rule, we construe and apply regulations the same way we construe and apply statutes. See, e.g., *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 776 (1980); *Knapp Shoes, Inc.* v. *Sylvania Shoe Mfg. Corp.*, 418 Mass. 737, 744 (1994); *Tesson* v. *Commissioner of Transitional Assistance*, 41 Mass. App. Ct. 479, 482 (1996). Ordinarily, statutory, and thus regulatory, changes of substance apply only to events that occur after the change's effective date. *Child Support Enforcement Div. of Alaska* v. *Brenckle*, 424 Mass. 214, 219 (1997), quoting from *Hanscom* v. *Malden & Melrose Gaslight Co.*, 220 Mass. 1, 3 (1914). To that general rule, however, there are several exceptions. One such exception gives retroactive effect to "curative" changes, *Gibbons* v. *Gibbons*, 86 N.J. 515, 523-525 (1981); *2nd Roc-Jersey Assocs.* v. *Morristown*, 158 N.J. 581, 604-605 (1999), i.e., changes "designed to remedy mistakes and defects in the administration of government where the remedy can be applied without injustice." *Canton* v. *Bruno*, 361 Mass. 598, 609 (1972), quoting from *Graham & Foster* v. *Goodcell*, 282 U.S. 409, 429 (1931). See generally *Magula* v. *Benton Franklin Title Co.*, 131 Wash. 2d 171, 182 (1997) ("[A]n

---

[9]The regulation was published in the Massachusetts Register that day and became effective on publication. G. L. c. 30A, § 6.

[10]In his original brief, however, the commissioner referred exclusively to the new regulation, although not to the new regulation's equivalency provision. In her original brief, Figueroa referred exclusively to the old regulation. After oral argument, we requested supplementary briefs on the amendment's impact, if any, on this case. Both parties then addressed the equivalency provision directly.

amendment may apply retroactively if it is curative or remedial and intended to clarify rather than change the law"); 2 Singer, Sutherland Statutory Construction § 41:11, at 468 (6th ed. rev. 2001).

To be sure, as our able colleague suggests in dissent, the doctrine of "curative" retroactivity typically deals with statutes that change some technical detail or defect in existing legislation. Although changes of that sort perhaps mark the doctrine's core, they do not define its outer boundaries. On the contrary, the "curative" legislation at issue in *Gibbons* v. *Gibbons*, 86 N.J. at 520, 524-525, modified an existing New Jersey divorce statute requiring equitable division of marital property to exempt gifts either spouse acquired during the course of their marriage. Accord *Grippo* v. *Schrenell & Co.*, 223 N.J. Super. 154, 161-164 (App. Div. 1988) (doctrine applied to statute that removed a statutory prohibition on indemnification agreements in construction contracts). The doctrine thus is flexible enough to deal not only with technical mistakes and oversights but with legislative and administrative efforts to fine tune existing regulatory schemes if the tuning can be done without creating injustice or upsetting settled expectations.[11]

The January 24, 1997, amendment to § 9.05(2) was "curative" in the sense just discussed. That amendment followed no change in the terms of a controlling statute and thus manifestly was designed to advance more effectively the same statutory policy as the regulation it replaced. The amendment's only effect was to provide a measure of elasticity to its predecessor's fixed and rigid eligibility criteria. The need for such elasticity undoubtedly sprang from an administrative conclusion that many college and university programs likely to assist people seeking new skills could not be identified simply by looking at

[11]Indeed, retroactive application of new legal standards in a way that upsets settled expectations or vested rights may raise significant constitutional difficulties. See *West* v. *First Agricultural Bank*, 382 Mass. 534, 549-551 & n.26 (1981); *Connolly's Case*, 418 Mass. 848, 852 (1994). No constitutional problems arise in cases like this one where retroactive effect is given legislation whose only conceivable adverse effect is on the Commonwealth. See *Greenaway's Case*, 319 Mass. 121, 123 (1946); *Massachusetts Bd. of Regional Community Colleges* v. *Labor Relations Commn.*, 377 Mass. 847, 850 (1979); *American Mut. Liab. Ins. Co.* v. *Commonwealth*, 379 Mass. 398, 405 (1979).

72                   54 Mass. App. Ct. 64 (2002)

Figueroa v. Director of the Department of Labor and Workforce Development.

the number of credit hours those programs produced. Finally, application of the amended regulation to Figueroa's application would create no injustice and would upset no settled expectations. The curative amendment therefore applied retroactively at least to applications that were proceeding through the administrative process at the time it took effect. Consequently, the commissioner should have applied it to Figueroa's application.

We cannot say that the commissioner's failure to apply the amended regulation to Figueroa's application was inconsequential. Other DET regulations recognize that "[t]he general goal of . . . § 30(c) is to allow claimants to acquire the new skills necessary to obtain employment," 430 Code Mass. Regs. § 9.01 (1993). The regulations also recognize that under § 30(c) individuals who have been "permanently separated from work, [are] unlikely to obtain suitable employment based on their most recently utilized skills, [unless they obtain] training [necessary] to become re-employed." 430 Code Mass. Regs. § 9.04(1) (1993). Particularly given those statutory goals, it surely would not have been beyond the commissioner's power to have concluded that the course of study on which Figueroa was embarked in the fall of 1996 was the equivalent of a twelve-credit course even though Bunker Hill only gave her nine credits. She was, after all, required to be on the Bunker Hill campus, working in a Bunker Hill building in a setting staffed with Bunker Hill teachers, for between twenty-nine and thirty-nine hours each week. Surely, the commissioner could conclude that few twelve-credit course combinations offered by accredited colleges and universities require that much focus on course-related work each and every week the course is in session. Of course, the commissioner could conclude otherwise. But the amended regulation required him at least to assess the adequacy of Figueroa's application in light of DET's revised standards.

In summary, although the commissioner's decision was correct as far as it went, it did not take account of the amended regulation and thus did not go far enough. Accordingly, the judgment of the District Court is vacated and the case is remanded to that court with instructions to remand the matter to the commissioner for consideration of the plaintiff's application

in light of the amended regulation of January 24, 1997, 430 Code Mass. Regs. § 9.05(2)(b)(1) (1997). See *Shyngle* v. *Director of Div. of Employment Security*, 392 Mass. 1009, 1010 (1984). See also *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. 357, 371 (1987).

*So ordered.*

RAPOZA, J. (dissenting). I agree with the majority that the commissioner's decision was not arbitrary, capricious, an abuse of discretion, or an error of law, and, as the majority indicates, "[o]rdinarily, that would end the matter." *Ante* at 69. My concern, however, derives from the majority's conclusion that the 1997 amendment to the regulation, 430 Code Mass. Regs. § 9.05(2)(b)(1) (1997), was merely "curative" or "remedial" in nature and may be applied retroactively to reassess the plaintiff's application for benefits.[1] I disagree and respectfully dissent.

I believe the change in the regulation was substantive in nature and not "curative" or "remedial." Rather than correcting an error or defect in the original provision, the amended regulation expands the grounds upon which an applicant may become eligible for benefits. An applicant was previously required to be in a program providing "a minimum of 12 credits each semester." 430 Code Mass. Regs. § 9.05 (2)(c)(1) (1993). Under the revised regulation, however, an applicant may be considered eligible for benefits if a program provides a minimum of 12 credits each semester "or the equivalent." 430 Code Mass. Regs. § 9.05(2)(b)(1) (1997). As amended, the regulation has clearly been rendered more favorable to program participants such as the plaintiff, providing them an opportunity to be considered eligible for benefits under a more flexible rule.

However wise the change in the regulation, it is not one of mere detail, nor is it the correction of an error or defect found to exist in the original provision. Similarly, it is not simply a clarification of a regulation that otherwise remains unchanged.

[1] The referenced changes became effective subsequent to the plaintiff's application for benefits and her request for administrative review of a hearing examiner's adverse decision.

Rather, it is a significant revision that was plainly intended to mitigate the harsh effects of an otherwise inflexible rule and to expand the ranks of those eligible for benefits. Indeed, the substantive significance of the amended provision is evident in the majority's decision to remand the case for further proceedings, effectively giving the plaintiff the benefit of the revised regulation.

I agree with the majority that the amendment "was designed to advance more effectively the same statutory policy as the regulation it replaced." *Ante* at 71. I disagree, however, with their unspoken suggestion that, unless a change in policy is indicated, the type of revision that occurred in this case is not substantive and may be applied retroactively. Rather, I conclude that the change in the criteria for eligibility that permits more applicants to qualify for benefits is significant and constitutes a substantive change in the regulation, even though the underlying statutory policy remains the same.

With respect to the retroactive application of the amended regulation, it is settled law that "all statutes are prospective in their operation, unless an intention that they shall be retrospective appears by necessary implication from their words, context or objects . . . ."[2] *Canton* v. *Bruno*, 361 Mass. 598, 606 (1972), quoting from *Hanscom* v. *Malden & Melrose Gas Light Co.*, 220 Mass. 1, 3 (1914). Thus, although amendments to both statutes and regulations can be applied retroactively, this may be done only where such application is indicated by the "words, context or objects" of the legislation. I discern no such necessary implication in the new regulation, nor has the majority indicated where such an implication is to be found.

In this case, the plaintiff, an unemployed mother with a child in her care, has been pursuing an associate degree in medical office administration. There is no doubt that she cuts a

[2] In *Canton* v. *Bruno*, 361 Mass. 598, 606-610 (1972), the court ruled that a particular statute could operate retroactively, but only after it first determined that the Legislature intended the provision to be retrospective in operation. In the present case, neither the text of the amended regulation nor its sparse legislative history indicate that the division of employment and training intended the revised provision to function retroactively. Indeed, in his supplementary brief, the commissioner disputes the retroactive application of the regulation amended by his department.

sympathetic figure. Nonetheless, as we have said in another context: "Sympathetic cases make bad law." *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 685 (1998). Although the rule announced today by the majority has the potential for effecting some good in the particular circumstances of this case, it does so at the risk of much mischief in the future. I would affirm the judgment of the District Court affirming the decision of the commissioner.