Following their separation from employment, William and Jacqueline McDonald brought this action, alleging that their former employer, PAR Hospitality, LLC (PAR), violated the Wage Act, G. L. c. 149, §§ 148 and 150, and the minimum fair wage law, G. L. c. 151, § 1 et seq. (MFWL).[3] After a four-day trial, the jury, answering special questions, found that the McDonalds had not proven their Wage Act claims. At a posttrial proceeding, the parties agreed that, in light of the jury's answers, the McDonalds were not entitled to any damages under the MFWL. The trial judge subsequently denied the McDonalds' motion for judgment notwithstanding the verdict, concluding that the Department of Labor Standards (department) regulation governing wage deductions was inapplicable and could not be used in determining PAR's compliance with the MFWL. See 454 Code Mass. Regs. § 27.05 (2015). Judgment entered in favor of PAR. This appeal followed.[4] We affirm.
1. Background. The facts are drawn from the jury's findings as well as the undisputed evidence. PAR is the owner and operator of the Super 8 Motel in Watertown (motel). From February, 2005, until 2013, the McDonalds worked for PAR, performing various functions, including taking motel reservations, providing front desk coverage, and undertaking on-call maintenance work.[5] As compensation, the McDonalds agreed to be paid ten dollars per hour for a set number of hours plus the provision of free housing (agreement).[6] The agreement was not reduced to writing.
For the duration of their employment, the McDonalds resided with their two children at 125-127 Arsenal Street, a two-family home adjacent to the motel. At first, they lived in the downstairs two-bedroom unit; upon their request, in 2013, PAR permitted them to move into the upstairs two-story, four-bedroom unit. From July 12, 2010, until December 31, 2012, the McDonalds each worked forty-eight hours per week.[7] Neither received any compensation for the hours that exceeded the agreement. At all relevant times, the minimum wage was eight dollars per hour. The value of the housing provided by PAR, as found by the jury, ranged from $1,500 per month in 2010 to $2,100 per month in 2013.
2. Standard of review. The trial judge's interpretation of the regulation is subject to de novo review.[8] See Commonwealth v. Aldana, 477 Mass. 790, 801 & n.22 (2017). Applying traditional rules of statutory construction, we must construe the regulation as promulgated, giving plain language its ordinary meaning. See Young v. Patukonis, 24 Mass. App. Ct. 907, 908 (1987). The language "must be considered in light of the other words surrounding [it], ... and its scope and meaning must be determined by reference to context." Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 418 Mass. 737, 744 (1994) (quotation omitted). "[W]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." Federal Natl. Mort. Assn. v. Hendricks, 463 Mass. 635, 641 (2012), quoting from Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514 (1975).
3. Discussion. PAR fully complied with the oral agreement entered into by the parties at the beginning of the employment relationship. However, a contract or agreement to pay employees less than the minimum wage is presumptively "oppressive and unreasonable" and void as against public policy.[9] G. L. c. 151, § 1. See G. L. c. 151, § 20 (prohibiting employers from raising this type of agreement as defense in MFWL action). Compare G. L. c. 149, § 148 (prohibiting special contracts).
On appeal, the McDonalds argue that where, as here, PAR failed to comply with the notice and writing requirements of 454 Code Mass. Regs. § 27.05(2), PAR was barred from taking any deductions from their weekly wages for housing.[10] As a fallback argument, the McDonalds contend that even if some credit was due for the housing, PAR was limited, pursuant to the regulation, to one thirty dollar per person weekly deduction. If PAR was not entitled to any credit for the housing (or was entitled to only a limited deduction), it paid the McDonalds less than minimum wage from July 12, 2010, until March 23, 2012.[11] If, on the other hand, the full value of the housing is included in the McDonalds' wages, PAR, the McDonalds agree, complied with the MFWL.
The first problem for the McDonalds is that the effective date of the portion of the regulation imposing the notice and writing requirements is January 16, 2015, well into this litigation. Compare 455 Code Mass. Regs. § 2.03(4) (1998). Generally, regulatory changes of substance may only be applied prospectively. See Biogen IDEC MA, Inc. v. Treasurer & Recr. Gen., 454 Mass. 174, 189-190 (2009). To the extent that the McDonalds seek to come within the exception for curative or remedial changes to regulations, they have not demonstrated that the language at issue was intended to clarify rather than to change the law. See Figueroa v. Director of the Dept. of Labor & Workforce Dev., 54 Mass. App. Ct. 64, 70-71 (2002). Moreover, the curative exception may not be invoked where, as here, "settled expectations" would be upset. Id. at 71.
Even assuming that this language in the regulation should be given retroactive effect, we conclude, as the judge did, that it was inapplicable to the facts of the case. Here, there is no evidence that PAR made "deductions" from the "basic minimum wage," which, pursuant to regulation, is defined as the statutory rate (then eight dollars per hour). See 454 Code Mass. Regs. § 27.02 (2015) ; G. L. c. 151, § 1. To the contrary, as agreed upon prior to the commencement of employment, PAR paid the McDonalds a flat rate per week, plus a housing benefit. Lacking PAR's wage and hour records, we are unable to ascertain how the cost of the housing was treated, if at all, for accounting purposes. Cf. G. L. c. 151, § 15 (imposing record-keeping requirements on employers). Assuming in the McDonalds' favor that the compensation arrangement can be construed to include "deductions" for lodging, their interpretation of the regulatory language cannot be reconciled with its ordinary meaning. The lodging covered by the regulation pertains to rooms.[12] The word "room" in the context of housing suggests a rooming or a lodging house, a dormitory for seasonal help, or a single bedroom in a private residence. In no sense is "a room" the equivalent of an entire apartment in a two-family house.
The McDonalds' proposed interpretation would lead to difficulties in application, as demonstrated by their case. For example, while the McDonalds seek to limit PAR's credit to a thirty dollar weekly deduction for the one bedroom they shared, PAR argues that it is entitled to a thirty dollar credit for each room of the five-room apartment occupied by the McDonald family. See 454 Code Mass. Regs. § 27.05(2). We prefer the simpler, more literal reading to one leading to uncertain results in application. See Commonwealth v. Hourican, 85 Mass. App. Ct. 408, 411 (2014) ("[W]e inspect the results of [the canons'] application for rationality and practicality"). We conclude that the regulation governing deductions for lodging did not apply, and thus PAR was not barred from receiving credit for the housing provided to the McDonalds during their employment.
Our interpretation finds support in other sections of the regulation, as well as in the related unemployment insurance benefits statute. See 454 Code Mass. Regs. § 27.02 (with certain exceptions not applicable here, "[t]he regular hourly rate shall include all remuneration for employment paid to, or on behalf of, the employee"); G. L. c. 151A, § 1(s )(A) (defining "wages" to mean "every form of remuneration ... whether paid directly or indirectly, including ... reasonable cash value of board, rent, housing, lodging ... and all remuneration paid in any medium other than cash").
Because the regulation did not apply, the judge did not err by refusing to limit the amount of the weekly credit to PAR to thirty dollars per person. See 454 Code Mass. Regs. § 27.05(2).
The judge did not err in denying the McDonalds' motion for judgment notwithstanding the verdict. The judgment, as corrected on September 14, 2017, is affirmed.
So ordered.
Affirmed

In their three-count complaint, the McDonalds alleged that PAR (1) failed to pay them all their earned wages in a timely fashion; (2) retaliated against them for complaining to the Attorney General's office about the nonpayment of wages; and (3) failed to pay them the statutory minimum wage for the duration of their employment. See G. L. c. 149, §§ 148, 148A ; G. L. c. 151, § 20.

The McDonalds have waived their Wage Act claims and press only their claim under the MFWL.

William McDonald's last day of work was January 14, 2013; Jacqueline McDonald's was May 25, 2013.

The jury specifically rejected the McDonalds' testimony about the terms of their compensation package, finding no agreement to pay the McDonalds for all the hours that they worked. Until March 22, 2012, the agreed-upon number of hours per week was thirty-two; from March 23, 2012, until the end of the employment, the agreed-upon number was forty hours. Between July 12, 2010, and March 22, 2012, PAR paid the McDonalds $320 per week (i.e., ten dollar per hour times thirty-two agreed-upon hours); and from March 23, 2012, to December 31, 2012, PAR paid the McDonalds $400 per week (i.e., ten dollars per hour times forty agreed-upon hours).

We note that, as motel employees, the McDonalds were not eligible for the statutory premium overtime rate. See G. L. c. 151, § 1A(12). The jury found that, in 2013, neither McDonald worked in excess of forty hours per week. The McDonalds do not press damage claims for this time period.

We have assumed that the legal issue, first presented in the McDonalds' motion in limine, was properly preserved at trial.

If the "commissioner" expressly approves the payment of a lesser wage, the rule does not apply. See G. L. c. 151, § 1. The "commissioner" is the director of the department. G. L. c. 151, § 2. There is no suggestion that PAR obtained the necessary approval triggering the statutory exception to the general rule.

Title 454 Code Mass. Regs. § 27.05(1) provides that "[n]o deduction, other than those required or expressly allowed by law, and those allowed for lodging and meals listed in 454 CMR 27.05(2) and (3), shall be made from the basic minimum wage." Title 454 Code Mass. Regs. § 27.05(2), governing permissible deductions for lodging provides, as herein relevant, that "[a]n employer may deduct from the basic minimum wage of an employee a sum per week as set forth in 454 CMR 27.05(2)(a) through (c) for lodging that is safe and sanitary, and meets the standards for housing established by [the State Sanitary Code].... A deduction for lodging is not permitted unless the employee voluntarily accepts and actually uses the room. Deductions for lodging shall not be made by the employer unless the employer has given the employee prior written notice describing the lodging, setting forth the amount to be charged to the employee for the lodging, and providing notice that the employee's acceptance of the lodging is voluntary, and the employee has provided voluntary written acceptance of the lodging and deductions."

During that time period, PAR paid each McDonald sixty-four dollars less than required each week by the MFWL (i.e., $384 [sixteen times eight dollars] minus $320 in actual wages). The $400 weekly wage paid to the McDonalds between March 23, 2012, and December 31, 2012, exceeded the minimum wage.

Pursuant to the regulation, the department does not permit the employer to take deductions for lodging "unless the employee voluntarily accepts and actually uses the room." The department caps the amount of the deduction by reference to the number of persons occupying the room.