NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-1077                                        Appeals Court


    BOARD OF HEALTH OF NORTHBRIDGE  vs.  KENNETH R. COUTURE.


                        No. 18-P-1077.

        Worcester.     March 13, 2019. - May 20, 2019.

            Present:  Wolohojian, Blake, & Shin, JJ.


State Sanitary Code.  Housing Court, Sanitary code violations.
    Municipal Corporations, Board of health.  Public Health.
    Food.  Permit.  Words, "Food establishment."


    Complaint received and sworn to in the Worcester County
Division of the Housing Court Department on May 28, 2015.

    Following transfer to the civil docket, the case was tried
before Diana H. Horan, J., and entry of judgment was ordered by
her.


    Henry J. Lane for the defendant.
    David J. Doneski for the plaintiff.


    BLAKE, J.  This case involves a violation of the State

sanitary code (code) by the defendant, Kenneth R. Couture, for

operating a business without obtaining a food establishment

permit from the plaintiff, the board of health of Northbridge

(board).  See G. L. c. 111, § 127A; 105 Code Mass. Regs.

§§ 590.000 (2010).  A judge of the Housing Court entered judgment pursuant to a jury verdict on special questions.[1]  The jury found that Couture violated the code by not obtaining a permit and that he failed to abide by the board's January 15, 2015, order requiring him to obtain one.  See Solimene v. B. Grauel & Co., KG, 399 Mass. 790, 800 (1987), quoting Commonwealth v. Licciardi, 387 Mass. 670, 675 (1982) ("The answers to the questions or issues submitted are considered a special verdict consisting of 'a statement of facts the jury have found from which the judge determines the appropriate judgment'").  The judge, acting as the finder of fact on the question of the number of days that Couture was in violation, imposed a fine of $7,500.  She also ordered him to cease and desist from serving beverages to the public until he obtained the proper permit.

Couture appeals, claiming that the board presented insufficient evidence he violated the code, the code did not apply to him, and the fine imposed was not supported by the evidence.  We affirm.[2]

---

[1] This case began with a criminal complaint filed in the Housing Court.  Prior to trial, the judge, with the assent of the parties, deemed the matter to be a civil action pursuant to G. L. c. 185C, § 19.

[2] Couture also argues that the board failed to introduce a certified copy of the applicable local regulations, and therefore the jury could not determine whether or not he

Background.  In 2014, Couture began operating a bowling alley business in Northbridge (town) known as Sparetime Recreation.  He bought bottled beverages from a Pepsi distributor and sold them to his customers.  In addition, he made coffee on the premises and served it, together with cream and sugar, to a senior bowling league.

On September 6, 2014, the town health inspector conducted a routine inspection of the bowling alley and observed that Couture was selling soda and bottled juice without a food establishment permit (permit).  Couture asked the inspector to leave before she could complete her inspection.  The inspection report stated that "the owner must apply for and pay for the annual permit from the [board] to sell food."  Couture had previously held a permit when he operated the bowling alley from 1998 to 2002, but when he resumed operation in 2014 he did not obtain a permit.[3]

---

violated those regulations.  Although the complaint filed by the board references both the State and local regulations, the questions submitted to the jury only concerned violations of the State regulations.  Accordingly, the board's failure to introduce local regulations at trial is immaterial to our analysis.

[3] Spare Time Enterprises (STE) operated the bowling alley prior to Couture's resumption of the operation in 2014.  STE had obtained a food permit from the board but returned it when Couture took over because the permit was not transferable.

By letter dated October 1, 2014, the board notified Couture that he needed to apply for and obtain a permit to continue selling prepackaged foods and beverages.  The board enclosed an application, notified Couture that the issue would be discussed at an upcoming meeting of the board, and requested his attendance at the meeting.  By letter dated January 15, 2015, the board notified Couture that an inspection revealed that a cooler was being used to sell soda, water, and juice, and that coffee was being served at the bowling alley without a permit. The letter notified Couture that he was required to obtain a permit as a "limited retail food establishment" with an annual permit fee of one hundred dollars.  The letter concluded by notifying Couture that the board had voted to give him fourteen days to submit the permit application and that a reinspection would take place thereafter.  Other than complaining to the chairman of the board about the one hundred dollar fee, Couture took no action.  He never applied for a permit.

Discussion.  1.  The regulations.  Chapter X of the code, as authorized under G. L. c. 111, § 127A (Chapter X), sets forth "Minimum Sanitation Standards for Food Establishments."  105 Code Mass. Regs. § 590.000 (2010).  Chapter X incorporates the Federal 1999 Food Code (1999 food code), published by the United States Department of Health and Human Services, except for "those provisions . . . which are specifically stricken or

modified by [Chapter X]."  The definitions set forth in Chapter X "shall be in addition to or a substitution for the same definition in [the 1999 food code] section 1-201.10 entitled Definitions."  105 Code Mass. Regs. § 590.002(B) (2010).

Chapter X's stated purpose, as adopted from the 1999 food code, is "to safeguard public health and provide to consumers food that is safe, unadulterated, and honestly presented."  105 Code Mass. Regs. § 590.002(A) (2010).  1999 food code § 1-102.10.  To that end, "[a] person may not operate a food establishment without a valid permit to operate issued by the regulatory authority."  105 Code Mass. Regs. § 590.002(A).  1999 food code § 8-301.11.  To obtain such a permit, a person must submit to the board a written application on a form provided by the board.  105 Code Mass. Regs. § 590.012(B) (2011).

At the time of this action, Chapter X defined a food establishment as "an operation that stores, prepares, packages, serves, vends, or otherwise provides food for human consumption . . . [s]uch as a restaurant; . . . market; . . . vending location; [or] institution . . . and . . . [t]hat relinquishes possession of food to a consumer directly."  105 Code Mass. Regs. § 590.002(B) (2010).  It included operations that are "conducted in a mobile, stationary, temporary, or permanent facility or location; where consumption is on or off the

premises; and regardless of whether there is a charge for the food."  105 Code Mass. Regs. § 590.002(B).

We pause to note that Chapter X was amended in 2018 (2018 regulations).  See 105 Code Mass. Regs. §§ 590.000 (2018).  The 2018 regulations replace "in their entirety" the definitions in the Federal 2013 Food Code.  105 Code Mass. Regs. § 590.001(C)(1) (2018).  In addition, the 2018 regulations explicitly exclude from the definition of food establishment "[a]n establishment that offers only prepackaged foods that are not time/temperature control for safety foods."  105 Code Mass. Regs. § 590.001(C)(1) (2018).  Couture asserts by means of a letter submitted pursuant to Mass. R. A. P. 16 (l), as appearing in 386 Mass. 1247 (1982), that the 2018 regulations, which were adopted after the briefing in this case, should be applied here. However, while curative or remedial changes intended to provide clarification may be applied retroactively, "regulatory[] changes of substance apply only to events that occur after the change's effective date."  Figueroa v. Director of the Dep't of Labor & Workforce Dev., 54 Mass. App. Ct. 64, 70 (2002).  Here, the 2018 change in the regulation's definition of a food establishment is substantive in nature, and not merely a clarification.  Consequently, the new definition cannot be

applied retroactively to potentially exempt Couture's sales from regulation in this case.[4]

Chapter X does not provide a definition of "food." Accordingly, in the present case we look to the definition set forth in the 1999 food code, which defines food as "a raw, cooked, or processed edible substance, ice, beverage, or ingredient used or intended for use or for sale in whole or in part for human consumption[.]"  1999 food code § 1-201.10(B)(27).  See 105 Code Mass. Regs. § 590.002(B) (2010). Couture does not contest that he sold food.  Instead, he argues that he did not operate a food establishment because he was selling prepackaged items and therefore was not required to obtain a permit.  To support his argument, he contends that a literal reading of Chapter X would lead to an "unreasonable" or "absurd result."  We disagree.

Here, the evidence supported the jury's finding that Couture was selling food for human consumption in violation of State and Federal regulations in effect at the time the violations occurred.  "In reviewing whether the evidence was

---

[4] Couture also argues that the 1999 food code's definition of a food establishment excludes distributors of nonhazardous food, and that Chapter X does not explicitly strike the 1999 food code's exception.  As discussed, where definitions differ, as they do here, we must apply the definition provided in Chapter X as in effect at the time of the events in this case. 105 Code Mass. Regs. § 590.002(B) (2010).  This argument thus fails.

sufficient to support a jury verdict, the appellate court adopts the view of the evidence most favorable to the plaintiff." Kitner v. CTW Transp., Inc., 53 Mass. App. Ct. 741, 749 (2002), citing Young v. Atlantic Richfield Co., 400 Mass. 837, 841 (1987), cert denied, 484 U.S. 1066 (1988). A jury verdict should not be disturbed where "a jury could reasonably have arrived at their verdict from any of the evidence that the plaintiff presented." Dartt v. Browning-Ferris Indus., Inc. (Mass.), 427 Mass. 1, 16 (1998), citing Labonte v. Hutchins & Wheeler, 424 Mass. 813, 821 (1997). Indeed, the application of the regulation in this case accomplishes its intended purpose of safeguarding public health.

2. The fine. Chapter X provides that any person found to have violated the regulations "shall . . . be fined not more than $100 for the first offense and not more than $500 for a subsequent offense." 105 Code Mass. Regs. § 590.019 (2000). It further states that a person found to have violated an order issued in accordance with the regulations shall be fined in the same amount, except that "[e]ach day's failure to comply with an order shall constitute a separate offense." 105 Code Mass. Regs. § 590.019 (2000). To do otherwise would "render the [regulation] ineffective to the point where [an individual in violation] might find it more viable to accept the fine rather than correct the condition. Such a result would be at odds with

the statutory mandate to construe" the regulation's stated purpose of safeguarding public health. Commonwealth v. Racine, 372 Mass. 631, 637 (1977). The "substantial magnitude" of the penalty provision "is a strong indication of the degree and extent to which the [board] felt that violations . . . should be punished." Id. at 638.

Couture argues, in essence, that the judge abused her discretion in assessing a fine of $7,500 because there was no evidence to support the claim of noncompliance with the regulations or, in the alternative, the evidence established violations on no more than two days. Accordingly, Couture claims the fine is arbitrary.[5] His first argument, that the evidence did not support a finding of noncompliance, is premised on an incorrect reading of the regulations as discussed supra.

As to the number of days of the violation, the evidence permitted a finding that Couture was subject to fines in the

---

[5] Here, with the agreement of the parties, the judge acted as the finder of fact to establish the number of days that Couture was in violation. The jury were instructed: "Pursuant to the State Sanitary Code, 105 CMR 590.019, the court may impose, depending on your verdict, certain consequences, but that will ultimately be up to me. You are simply to determine whether or not there has been a violation of those sections of the code." We note that even if the question of the number of days of the violation was a question that should have been decided by the jury, the issue is waived; Couture has not raised the issue on appeal, nor did he object below. Equally important, on this record there was no prejudice as the fine was well below the maximum possible penalty.

amount of up to $600 for violating the regulations on two separate instances as set forth in the inspection reports from September 6, 2014, and November 22, 2014, as well as fines in an amount between $28,700 and $143,100 for violating the board's order for 287 days beginning January 30, 2015 (the compliance deadline set forth in the board's order) and November 13, 2015 (the first day of trial).

Indeed, Couture testified about the ongoing sale of beverages and service of coffee. He stated, "We buy Pepsi," and, "During the day we give free coffee to the ladies -- the senior leagues." He sold water, as he explained, because "the water from the town is -- it's very rusty tasting, so the customers are looking for . . . clean water."

The primary purpose of code enforcement, as is the case here, is to protect the public health and safety, rather than to punish past violations. See Commonwealth v. Hadley, 351 Mass. 439, 444 (1966). The judge had a full range of sanctions available to her, including fines. See Housing Court Standing Order 1-04, note 26 (2004). Couture's claim that the fine is arbitrary is belied by the record. Indeed, the fine imposed by the judge was well below the lowest range of fines proposed by

the board and authorized by law.[6]  As such, we conclude that the judge did not abuse her discretion.[7,8]

                                        Judgment affirmed.

---

[6] We note that Chapter X provides for fines for violations of either the regulations or of the board's order in amounts not more than $100 and $500 for first and subsequent violations, respectively.  105 Code Mass. Regs. § 590.019 (2000).  The regulation proscribes no minimum amount.  The highest fine for the two violations in this case is $600, and for 287 separate violations of the board's order, $143,100.  Even if the minimum fine was zero dollars, on this record, we cannot say that the judge abused her discretion in imposing a $7,500 fine as that amount was reasonable, particularly given that it is far below the highest possible fine.

[7] An abuse of discretion occurs where "the judge made a clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotations and citation omitted).  L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).  "A decision is arbitrary or capricious such that it constitutes an abuse of discretion where it 'lacks any rational explanation that reasonable persons might support.'"  Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016), quoting Doe v. Superintendent of Sch. of Stoughton, 437 Mass. 1, 6 (2002).

[8] The board's request for appellate fees and costs is denied.